OPINION OF THE COURT
 

 Levine, J.
 

 This appeal presents the first occasion for us to determine how our defamation jurisprudence, developed in connection with traditional mass media communications, applies to communications in a new medium — cyberspace—in the modern Information Age. Specifically, we must resolve the question whether, for statute of limitations purposes, the single publication rule is applicable to allegedly defamatory statements that are posted on an Internet site and, if so, whether an unrelated modification to a different portion of the Web site constitutes a republication.
 

 Claimant George Firth was formerly employed by the Department of Environmental Conservation as Director of the Division of Law Enforcement. His responsibilities included weapons acquisition. At a press conference held on December 16, 1996, the Office of the State Inspector General issued a report entitled “The Best Bang for Their Buck,” which was critical of claimant’s managerial style and procurement of weapons. On the same day, the State Education Department posted an executive summary with links to the full text of the report on its Government Information Locator Service Internet site.
 

 
 *368
 
 On March 18, 1998, more than one year after the report was first released and posted on the Internet, claimant filed a claim against the State alleging that the report defamed him. The State moved to dismiss on the ground that the claim was time-barred under the one-year statute of limitations for defamation
 
 (see
 
 CPLR 215 [3]). In opposition, claimant argued the merits of his defamation claim, failing to address the statute of limitations issue. The Court of Claims then sua sponte directed the State to submit an affidavit from someone with personal knowledge setting forth the date that the report was first placed on the Internet and the dates, if any, of any modifications to the text of the report. The court also gave claimant the opportunity to respond.
 

 The State proffered an affidavit from Thomas Ruller, a State Education Department associate programmer analyst, stating that on December 16, 1996, at the request of the Inspector General, he placed an executive summary of the report on the Internet and made links to enable users to download or view the text of the report. Ruller further averred that no subsequent modifications to the text were made. In response, claimant’s attorney submitted a letter indicating that neither he nor his client knew of any posting of the report on the Internet other than that described in Ruller’s affidavit. The letter also noted that the State had modified the Web site by posting a report of the Inspector General regarding the Department of Motor Vehicles (DMV), which previously had been submitted to the court. Claimant asserted that a modification of a Web site should be considered a republication of information previously contained on that site.
 

 The Court of Claims granted summary judgment to the State, rejecting claimant’s argument that the ongoing availability of the report via the Internet constituted a continuing wrong or new publication. The court concluded that the statute of limitations began to run on December 16, 1996, when the report was first made available on the Internet. The court did not address whether the modification of the State’s Web site by the addition of the report on the DMV constituted a republication of the report concerning claimant.
 

 The Appellate Division affirmed (287 AD2d 771), reasoning that the single publication rule applied and that the claim was not timely filed. Two dissenting Justices concluded that claimant raised an issue whether “modifications to the State’s website linking to this report could support a finding” that the report was subsequently republished after the initial posting
 
 *369
 
 (287 AD2d at 775). Claimant now appeals as of right to this Court
 
 (see
 
 CPLR 5601 [a]).
 

 In
 
 Gregoire v Putnam’s Sons,
 
 we adopted the single publication rule, namely that
 

 “the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and that the applicable [s]tatute of [1] imitation [s] runs from the date of that publication” (298 NY 119, 123 [1948];
 
 see
 
 Restatement [Second] of Torts § 577A [3]).
 

 Claimant argues that the single publication rule should not be applied verbatim to defamatory publications posted on the Internet in light of significant differences between Internet publications and traditional mass media. Instead, claimant maintains that because a Web site may be altered at any time by its publisher or owner and because publications on the Internet are available only to those who seek them, each “hit” or viewing of the report should be considered a new publication that retriggers the statute of limitations. We disagree.
 

 Under the early common law of defamation, which claimant seeks to have applied in this case, each communication of a defamatory statement to a third person constituted a separate publication giving rise to a new cause of action
 
 (Gregoire,
 
 298 NY at 122-123 [citing
 
 Duke of Brunswick v Harmer,
 
 14 QB 185 (1849)]). In
 
 Gregoire,
 
 we held that a publisher’s sale from stock of a copy of a book containing libelous language did not constitute a new publication. We explained that if the multiple publication rule were applied to such a sale, “the [s]tatute of [1]im-itation [s] would never expire so long as a copy of such book remained in stock and is made by the publisher the subject of a sale or inspection by the public. Such a rule would thwart the purpose of the Legislature * * * to bar completely and forever all actions which, as to the time of their commencement, overpass the limitation there prescribed upon litigation”
 
 (id.
 
 at 125-126 [internal quotation marks omitted];
 
 see also Wolf son v Syracuse Newspapers,
 
 254 App Div 211 [1938],
 
 affd without op
 
 279 NY 716 [1939]).
 

 In addition to increasing the exposure of publishers to stale claims, applying the multiple publication rule to a communication distributed via mass media would permit a multiplicity of
 
 *370
 
 actions, leading to potential harassment and excessive liability, and draining of judicial resources
 
 (see Keeton v Hustler Mag., Inc.,
 
 465 US 770, 777 [1984]; Restatement [Second] of Torts § 577A, Comment
 
 d,
 
 at 210,
 
 supra;
 
 Note,
 
 Cyber-Defamation and the Single Publication Rule,
 
 81 BU L Rev 895, 898, 913 [2001]). Further, the single publication rule actually reduces the possibility of hardship to plaintiffs by allowing the collection of all damages in one case commenced in a single jurisdiction
 
 (see
 
 Restatement, Comment
 
 d;
 
 Note, 81 BU L Rev at 898). Thus, we have held that, absent republication, “neither the time nor the circumstance in which a copy of a book or other publication finds its way to a particular consumer is, in and of itself, to militate against the operation of the unitary, integrated publication concept”
 
 (Rinaldi v Viking Penguin, 52
 
 NY2d 422, 433 [1981]).
 

 The policies impelling the original adoption of the single publication rule support its application to the posting of the Inspector General’s report regarding claimant on the State’s Web site. Communications accessible over a public Web site resemble those contained in traditional mass media, only on a far grander scale. Those policies are even more cogent when considered in connection with the exponential growth of the instantaneous, worldwide ability to communicate through the Internet. As aptly stated in
 
 Reno v American Civ. Liberties Union
 
 (521 US 844, 853 [1997]), “[flrom the publisher’s point of view, [the World Wide Web] constitutes a vast platform from which to address and hear from a worldwide audience of millions of readers, viewers, researchers, and buyers.” Communications posted on Web sites may be viewed by thousands, if not millions, over an expansive geographic area for an indefinite period of time.
 

 Thus, a multiple publication rule would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants. Inevitably, there would be a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the Internet, which is, of course, its greatest beneficial promise
 
 (see,
 
 Note,
 
 Cyber-Defamation and the Single Publication Rule,
 
 81 BU L Rev at 912-913;
 
 see also Van Buskirk v New York Times Co.,
 
 2000 WL 1206732, *1-2, 2000 US Dist LEXIS 12150, *4-6 [SD NY, Aug. 24, 2000]). Thus, we hold that the single publication rule, applies in this case.
 

 Claimant alternatively argues that if the single publication rule governs, the State should be deemed to have repub
 
 *371
 
 lished the report within one year of the filing of the claim when it added an unrelated report of the Inspector General on the DMV to the Education Department’s Web site in May 1997.
 
 *
 
 We conclude as a matter of law that this modification of the State’s Web site did not constitute a republication of the allegedly defamatory report at issue here.
 

 Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely “a delayed circulation of the original edition”
 
 (Rinaldi v Viking Penguin, 52
 
 NY2d at 435; Restatement [Second] of Torts § 577A, Comment
 
 d,
 
 at 210,
 
 supra).
 
 The justification for this exception to the single publication rule is that the subsequent publication is intended to and actually reaches a new audience
 
 (see Rinaldi, 52
 
 NY2d at 433 [citing
 
 Cook v Conners,
 
 215 NY 175 (1915)]; Restatement, Comment
 
 d).
 
 Thus, for example, repetition of a defamatory statement in a later edition of a book, magazine or newspaper may give rise to a new cause of action
 
 (see Rinaldi, 52
 
 NY2d at 433-435 [hard-cover and paperback editions of the same book];
 
 see also Cook v Conners,
 
 215 NY at 179 [morning and afternoon editions of newspapers owned and published by the same individual]).
 

 The mere addition of unrelated information to a Web site cannot be equated with the repetition of defamatory matter in a separately published edition of a book or newspaper, as in
 
 Rinaldi
 
 and
 
 Cook.
 
 The justification for the republication exception has no application at all to the addition of unrelated material on a Web site, for it is not reasonably inferable that the addition was made either with the intent or the result of communicating the earlier and separate defamatory information to a new audience.
 

 We observe that many Web sites are in a constant state of change, with information posted sequentially on a frequent basis. For example, this Court has a Web site which includes its decisions, to which it continually adds its slip opinions as they are handed down. Similarly, Web sites are used by news organizations to provide readily accessible records of newsworthy events as they occur and are reported. Those unrelated ad
 
 *372
 
 ditions are indistinguishable from the asserted DMV report modification of the State’s Web site here. A rule applying the republication exception under the circumstances here would either discourage the placement of information on the Internet or slow the exchange of such information, reducing the Internet’s unique advantages. In order not to retrigger the statute of limitations, a publisher would be forced either to avoid posting on a Web site or use a separate site for each new piece of information (see Note,
 
 Cyber-Defamation and the Single Publication Rule,
 
 81 BU L Rev at 915). These policy concerns militate against a holding that any modification to a Web site constitutes a republication of the defamatory communication itself.
 

 Finally, inasmuch as claimant failed to argue before the Court of Claims in opposition to the State’s summary judgment motion that the State republished the report by posting a link to it on the Office of the Inspector General’s separate, internal Web site, that issue is not preserved for our review.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Cipaeick, Wesley, Rosenblatt and Geaffeo concur.
 

 Order affirmed, with costs.
 

 *
 

 We disagree with the conclusion of the Appellate Division majority that claimant failed to submit evidence in admissible form supporting that contention. As previously noted, this contention was made by claimant’s counsel in a letter to the court in response to the State’s motion for summary judgment. The letter referred to a previously submitted affidavit to which the actual DMV report, obtained from the Web site, had been attached.