876 A.2d 311 (2005)
378 N.J. Super. 471
Scott E. CHURCHILL and Michael Russo, Plaintiffs-Appellants,
v.
STATE of New Jersey, Commission of Investigation, Robert Clark, Michael Dancisin, and Ileana Saros, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted May 23, 2005.
Decided June 23, 2005.
*313 Mueller, Russo & Warmington, attorneys for appellants (Gregory R. Mueller, on the brief).
Peter C. Harvey, Attorney General, attorney for respondents (Patrick DeAlmeida, Assistant Attorney General, of counsel; Karen L. Jordan, Deputy Attorney General, on the brief).
Before Judges PETRELLA, PARKER and YANNOTTI.
The opinion of the court was delivered by
PETRELLA, P.J.A.D.
Plaintiffs Scott E. Churchill and Michael Russo appeal from the dismissal of their complaint alleging defamation. The Law Division dismissed the complaint on the ground that it was filed beyond the applicable one-year statute of limitations. This appeal raises the novel question of whether the "single publication rule" applies to publication on the Internet.
On appeal, plaintiffs argue: (1) the single publication rule should not be extended to claims of libel for items posted on an Internet website; (2) there were significant changes to defendants' website within the applicable statute of limitations period constituting a republication of the offending material; and (3) plaintiffs should be permitted time for discovery to acquire additional information.
Churchill and Russo were volunteers with the Warren County Society for the Prevention of Cruelty to Animals. Defendants Robert Clark, Michael Dancisin and Ileana Saros were employed by the State Commission of Investigation (SCI), a governmental entity empowered to conduct investigations regarding the proper execution and enforcement of State laws, the conduct of public officers and employees and any matter concerning the public peace, public safety and public justice. The SCI also conducts investigations as requested by the Governor or the Legislature. N.J.S.A. 52:9M-1 to -20; Pelullo v. State of N.J., Comm'n of Investigation, 294 N.J.Super. 336, 346, 683 A.2d 558 (App.Div.1996), certif. denied, 149 N.J. 35, 692 A.2d 48 (1997).
The SCI functions to explore areas of concern which may be a proper subject for legislative or executive action; it is not an "accusatory" body. Pelullo, supra, 294 *314 N.J.Super. at 346-347, 683 A.2d 558 (citing Zicarelli v. N.J. State Comm'n of Investigation, 55 N.J. 249, 258, 260-261, 261 A.2d 129 (1970), aff'd, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972)). It is obligated to issue an annual report and such interim reports as it deems advisable or as required by the Governor or the Legislature, N.J.S.A. 52:9M-10, and to keep the public informed of its activities. N.J.S.A. 52:9M-11.
In 1997, the SCI began a statewide investigation into the State's Societies for the Prevention of Cruelty to Animals that was conducted by Clark, Dancisin and Saros and resulted in the publication by the SCI of a report on April 26, 2001 (report). A portion of this report was directed at the Warren County Society and plaintiffs allege that the facts cited in that portion of the report improperly accuse them of dishonesty, secrecy and fiscal irresponsibility. The report also stated that plaintiffs' fiscal mismanagement had left the Warren County Society in an untenable situation.[1]
On April 24, 2003, plaintiffs filed a pro se complaint against defendants, alleging defamation based upon the April 26, 2001 publication. Plaintiffs contend that when the SCI published its report defendants knew or had reason to know that it contained libelous statements which injured them, and that defendants published those statements with malice, "in an effort to discredit, malign, and impugn the honesty and integrity of Plaintiffs." Defendants denied liability and asserted the defense of the one-year statute of limitations for defamation claims. N.J.S.A. 2A:14-3.
Defendants then successfully moved to dismiss under R. 4:6-2(e), on the basis that the defamation claim was time-barred by the one-year statute of limitations. In applying the statute, the judge applied the single publication rule to the publication of the SCI report on the Internet.

I.
Plaintiffs contend that the single publication rule should not be extended to publication on the Internet. They argue that the Internet is akin to radio and television broadcasts where the multiple publication rule applies, and should not be treated in the same manner as the publication of books and magazines, as to which the single publication rule applies.
Plaintiffs also contend that publishers of material on the Internet (Internet publishers) lack the "internal controls" and professionalism found in traditional print media. Hence, Internet publishers should not receive the protection of the single publication rule.
Additionally, plaintiffs contend that Internet publication is subject to potential fraud and abuse not generally associated with traditional print media. In particular, they contend that Internet publishers could utilize the single publication rule to avoid liability for defamation by restricting access to what might be a defamatory document during the statute of limitations period, and then, after the limitations period has expired, hyper-linking that document to major search engines, thereby significantly increasing the likelihood of access by the public to a defamatory document.
Moreover, plaintiffs contend that the Internet is more permanent than traditional *315 print media. Plaintiffs assert that traditional print media is generally date-sensitive and printed in a single edition, after which it becomes dated and less accessible to the general public; by contrast Internet publications are available in the same manner, with the same level of prominence, throughout time, and have the potential for much greater circulation than traditional print media.
Plaintiffs argue that Internet publishers, unlike traditional print media publishers, make a conscious choice every day to publish a document by maintaining the document on a website. Plaintiffs point out that Internet publishers, unlike traditional print media publishers, could easily remove an offensive document from further general public view by removing it from the website.
As a result, plaintiffs contend that the single publication rule should not apply to Internet publications and that their claim was not time-barred by the one-year statute of limitations because, commencing in 2001 and to date, defendants continually republished the allegedly defamatory statements by maintaining a copy of the report on the SCI's website (www.state.nj.us/sci).[2] This argument relies on the contention that each date the report appeared on the website constituted a separate publication, and the statute of limitations does not begin to run until the report is removed from the website.
Alternatively, plaintiffs contend that the single publication rule is not a bar to their defamation claim because the SCI's website (but apparently not the report) was updated on several occasions, altering the means by which website visitors could access the report. Specifically, plaintiffs refer to the following changes to the SCI's website: (1) in the spring or summer of 2002, the website menu bar was moved from the top of the home page to the left hand side of the home page, the menu bar was highlighted in bright yellow in order to make it stand out, and the menu bar was altered to include a section entitled "Investigative Reports," under which website visitors may access the report; and (2) a press release was posted on the website on March 5, 2003, that directly referenced the report and invited visitors to the site to view the report. Plaintiffs contend that each alteration to the website constituted a separate publication of the report, thereby extending the limitations period and rendering their defamation claim timely.
Finally, plaintiffs contend that factual questions required discovery and precluded dismissal of their complaint on motion. They seek discovery regarding: (1) the date the report was first published on the SCI's website; and (2) the number of times the website has been altered, amending the means by which the public may access the report.
The motion judge rejected plaintiffs' arguments and dismissed the defamation claim as time-barred because: (1) the publication date of the report was April 2001, when it was distributed to various state governmental entities and made available for viewing on the SCI's website (thereby rejecting plaintiffs' contention, unsupported by any New Jersey case law, that the publication date did not occur until later, when the report achieved "substantial distribution"); (2) the single publication rule applied to Internet publications; and (3) technical amendments to the website, which altered the means by which website visitors accessed the report, did not constitute republication.

II.
Since this appeal raises a purely legal issue regarding the applicable statute *316 of limitations, we review the issue de novo. Manalapan Realty, L.P. v. Tp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). We affirm, and hold that the Internet publication of a document, where that document remains unchanged after its original posting, is subject to a one-year statute of limitations that runs from the date of publication of the alleged libel or slander. N.J.S.A. 2A:14-3.
New Jersey follows the single publication rule for mass publications under which a plaintiff alleging defamation has a single cause of action, which arises at the first publication of an alleged libel, regardless of the number of copies of the publication distributed or sold. Barres v. Holt, Rinehart & Winston, Inc., 131 N.J.Super. 371, 374-375, 379, 390, 330 A.2d 38 (Law Div.1974), aff'd o.b., 141 N.J.Super. 563, 359 A.2d 501 (App.Div.1976), aff'd o.b., 74 N.J. 461, 378 A.2d 1148 (1977). See also Restatement (Second) of Torts § 577A(3) (1977) ("Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication."). In adopting the single publication rule for mass publications, New Jersey rejected the traditional multiple publication rule under which each repetition of a libel, for example, each sale of a publication, would create a new cause of action. Barres, supra, 131 N.J.Super. at 374-375, 330 A.2d 38.
The single publication rule prevents the constant tolling of the statute of limitations, effectuating express legislative policy in favor of a short statute of limitations period for defamation. It also allows ease of management whereby all the damages suffered by a plaintiff are consolidated in a single case, thereby preventing potential harassment of defendants through a multiplicity of suits. Id. at 379, 387-388, 330 A.2d 38. Accord, Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777, 104 S.Ct. 1473, 1480, 79 L. Ed.2d 790, 799 (1984); Gregoire v. G.P. Putnam's Sons, 298 N.Y. 119, 81 N.E.2d 45, 47-49 (1948); Restatement (Second) of Torts, supra, § 577A. Finally, the single publication rule is more consistent with modern practices of mass production and widespread distribution of printed information than the multiple publication rule. Barres, supra, 131 N.J.Super. at 380-381, 330 A.2d 38 (citing Gregoire, supra, 81 N.E.2d at 46-47).
We have found no New Jersey case law addressing whether the single publication rule applies to Internet publications. Indeed, there is a dearth of New Jersey case law discussing the single publication rule in any context.
However, other jurisdictions are almost unanimous in holding that the single publication rule should be applied to Internet publications. Firth v. State, 98 N.Y.2d 365, 747 N.Y.S.2d 69, 775 N.E.2d 463 (2002), involved similar facts as the case before us and is instructive on this issue. There, the plaintiff was a former employee of the State Department of Environmental Conservation, where his responsibilities had included weapons acquisition. In December 1996, the State Inspector General's office issued a report that was critical of plaintiff's managerial style and procurement of weapons, and the State Education Department posted an executive summary of the report, with links to the full text of the report on its Government Information Locator Service Internet site. Id. at 464.
Over a year after the report was first released and posted on the Internet, the plaintiff filed a claim against the State, alleging defamation. The trial judge dismissed the claim on statute of limitations grounds, and the appellate courts affirmed. Ibid.
*317 The New York Court of Appeals held that the single publication rule applied to Internet publications and the claim was barred by the applicable statute of limitations. Id. at 465-466. The court rejected arguments similar to those made by plaintiffs in the instant case. For example, the plaintiff in Firth had argued that
the single publication rule should not be applied verbatim to defamatory publications posted on the Internet in light of significant differences between Internet publications and traditional mass media. Instead, claimant maintains that because a Web site may be altered at any time by its publisher or owner and because publications on the Internet are available only to those who seek them, each "hit" or viewing of the report should be considered a new publication that retriggers the statute of limitations.
[Id. at 465.]
The court disagreed, finding that Internet publications should be treated in the same manner as publications made through traditional mass media. Id. at 465-466. The court stated:
The policies impelling the original adoption of the single publication rule support its application to the posting of the Inspector General's report regarding claimant on the State's Web site. Communications accessible over a public Web site resemble those contained in traditional mass media, only on a far grander scale. Those policies are even more cogent when considered in connection with the exponential growth of the instantaneous, worldwide ability to communicate through the Internet. As aptly stated in Reno v. American Civ. Liberties Union, 521 U.S. 844, 853, 117 S.Ct. 2329, 138 L. Ed.2d 874 (1997), "[f]rom the publisher's point of view, [the World Wide Web] constitutes a vast platform from which to address and hear from a worldwide audience of millions of readers, viewers, researchers, and buyers." Communications posted on Web sites may be viewed by thousands, if not millions, over an expansive geographic area for an indefinite period of time.
Thus, a multiple publication rule would implicate an even greater potential for endless retriggering of the statute of limitations, multiplicity of suits and harassment of defendants. Inevitably, there would be a serious inhibitory effect on the open, pervasive dissemination of information and ideas over the Internet, which is, of course, its greatest beneficial promise. Thus, we hold that the single publication rule applies in this case.
[Id. at 465-66 (internal citations omitted).]
Firth also rejected the plaintiff's contention that modifications to the website constituted republications of the allegedly defamatory report. Id. at 466-467. The court concluded that minor changes to a website, adding information unrelated to the report about which the plaintiff complained, could not be equated with the republication of defamatory matter. Ibid. In so ruling, the court observed that "many Web sites are in a constant state of change, with information posted sequentially on a frequent basis." Id. at 467. Hence, to find republication with every minor alteration to a website
would either discourage the placement of information on the Internet or slow the exchange of such information, reducing the Internet's unique advantages. In order not to retrigger the statute of limitations, a publisher would be forced either to avoid posting on a Web site or use a separate site for each new piece of information. These policy concerns militate against a holding that any modification *318 to a Web site constitutes a republication of the defamatory communication itself.
[Ibid. (internal citation omitted).]
Other courts have also applied the single publication rule to Internet publications. See, e.g., Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 89-90 (2d Cir.2003); Lane v. Strang Communications Co., 297 F.Supp.2d 897, 899-900 (N.D.Miss.2003); Mitan v. Davis, 243 F.Supp.2d 719, 721-724 (W.D.Ky.2003); Simon v. Ariz. Bd. Of Regents, 28 Media Law Reports 1240, 1245-1246 (Ariz.Sup.Ct.1999); Traditional Cat Ass'n, Inc. v. Gilbreath, 118 Cal.App.4th 392, 13 Cal.Rptr.3d 353, 355, 358-363 (2004); McCandliss v. Cox Enter., Inc., 265 Ga.App. 377, 593 S.E.2d 856, 858 (2004), reconsid. denied (Feb. 2, 2004), cert. denied (May 24, 2004); Abate v. Me. Antique Digest, 2004 WL 293903, *1-2 (Mass.Sup.Ct. Jan. 26, 2004); E.B. v. Liberation Publ'ns, Inc., 7 A.D.3d 566, 777 N.Y.S.2d 133, 134 (2004). Cf., Oja v. Fink, 2003 WL 23996035, *4-5 (D.Or. Feb.26, 2003) (for purposes of the accrual of a Privacy Act claim, the posting of offensive information on an Internet website is treated as a discrete act, akin to the publication of offensive information in a magazine for defamation purposes).
Plaintiffs cite only one decision (not officially published) in which a court applied the multiple publication rule in the context of electronic publications: Swafford v. Memphis Individual Practice Ass'n, 1998 WL 281935 (Tenn.Ct.App. June 2, 1998). The facts in Swafford, however, are substantially different than those presented in the case before us.[3]
In Swafford, the plaintiff was a licensed physician practicing family medicine in Tennessee. Entities that plaintiff had been associated with (a health maintenance organization and an organization responsible for supervising physicians who treat policyholders in Tennessee) had reported to the National Practitioner Data Bank that the plaintiff's clinical privileges had been revoked due to violations of quality care standards. Id. at *1. The Data Bank is an electronic database, operated pursuant to federal law, which stores information related to the quality of care of physicians. Id. at *5. Information contained in the Data Bank is confidential and may be accessed only by certified health care entities. Ibid.
At least three entities had retrieved information about the plaintiff from the Data Bank. Id. at *1. Swafford held that each dissemination of defamatory information from the Data Bank, in response to an affirmative request by a certified hospital or other health care entity, gave rise to a separate cause of action for defamation. *319 Id. at *4-11. These circumstances were considered analogous to the discrete dissemination of credit reports at the request of creditors, as to which a multiple publication rule has been applied. Id. at *6. The court found the circumstances dissimilar to the mass publication of a book or magazine, as to which a single publication rule has been applied, because information contained in the data bank was not made available to the general public in a mass publication. Id. at *8.
The situation in Swafford, where a multiple publication rule was applied, is distinguishable from the case under review. In Swafford, the information about which the plaintiff complained was maintained in the National Practitioner Data Base; it was accessible only to a specified group of certified health care entities, and it was made available only upon request. By contrast, in the case before us, there was a mass distribution of a governmental report via the SCI's website. The SCI's distribution of the report is comparable to the mass publication of a book or magazine, as to which the single publication rule has been applied. Accordingly, based on these factual differences, we decline to apply the principles embraced in Swafford.
Hence, we adopt what we consider the majority position and apply the single publication rule to Internet publications. We find no principled basis in a situation like the one before us for treating the Internet differently than other forms of mass media. The Internet appears to be particularly suited to application of the single publication rule because it is rapidly becoming (if it has not yet already become) the current standard for the mass production, distribution and archival storage of print data and other forms of media.

III.
We also reject plaintiffs' contention that updates to the SCI's website constituted republications of the report. The updates were merely technical changes to the website. They altered the means by which website visitors could access the report, but they in no way altered the substance or form of the report. Therefore, to treat the changes as republications would be inappropriate and defeat the beneficial purposes of the single publication rule.
In summary, plaintiffs' arguments against application of the single publication rule are unpersuasive. Plaintiffs cite no authority for treating Internet publishers differently than traditional media based upon the existence or non-existence of internal editorial controls. They argue that if there were sufficient additional controls for an Internet publication, then the single publication rule might be warranted; if sufficient controls do not exist, they urge us to apply the multiple publication rule. But, plaintiffs provide no explanation as to what level of editorial control might suffice to warrant application of the single publication rule. In any event, we prefer not to intrude in a debate over standards of editorial quality.
Moreover, plaintiffs cite no authority for their contention that Internet websites are subject to more fraud or abuse than traditional print media based upon the fact that Internet publishers could withhold widespread distribution of material until after the limitations period has run.[4] Indeed, this danger also exists with traditional print media. For example, in Barres, supra, 131 N.J.Super. at 390, 330 A.2d 38, *320 the Law Division Judge noted that an unscrupulous publisher could take advantage of the single publication rule by making a small distribution of the libelous material at a remote place in order to start the limitations period running, and then make a larger distribution at a later date. The court found that this potential problem was "manageable" under existing New Jersey law; for example, the court suggested that a defendant could be estopped from pleading a statute of limitations defense if he were deemed guilty of inequitable conduct. Ibid.
Finally, plaintiffs' contention that the Internet is any more permanent or pervasive than traditional print media is also unpersuasive. Print media may be available in perpetuity in libraries and the like. Furthermore, to a great degree traditional print media is now made permanently available through Internet archives and paid subscription services such as Lexis Nexis© as well as storage on various forms of media that record data.
In light of our approval of the trial judge's dismissal of the plaintiffs' defamation claim as time-barred by the statute of limitations, we deem plaintiffs' arguments for additional discovery as without merit. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] The report is not part of the appellate record. However, it is available at www.state.nj.us/sci.

Defendants state that they provided a copy of the report to plaintiffs prior to publication, as required under N.J.S.A. 52:9M-12.2. Churchill submitted a comment to the report, dated December 13, 2000, which was included in Appendix 2 to the report.
[2] Numerous SCI reports are listed on the website in chronological order.
[3] No additional cases have been found which adopted a multiple publication rule in the context of Internet or electronic communications. However, the debate over whether to apply the single or multiple publication rule to Internet publications has been addressed in several law review articles. See, e.g., Lori A. Wood, Cyber-Defamation and the Single Publication Rule, 81 B.U. L.Rev. 895 (2001) (arguing in favor of applying the single publication rule to Internet publications); Odelia Braun, Comment: Internet Publications and Defamation: Why the Single Publication Rule Should Not Apply, 32 Golden Gate U.L.Rev. 325 (2002) (arguing against applying the single publication rule to Internet publications); Sapna Kumar, Comment: Website Libel and the Single Publication Rule, 70 U. Chi. L.Rev. 639 (2003) (arguing that initial publication on Internet should be found to occur only when the website is "truly available" to the public, and courts should find that a libelous statement has been republished when statement itself is altered or when website publisher knowingly attempts to disseminate libelous statement to new audience; suggesting analysis of website traffic data to determine dates when publication and republication occurred).
[4] We do not intend by our opinion to endorse a single publication rule for websites that are transient in nature or run anonymously.