983 A.2d 1128 (2009)
410 N.J. Super. 574
Paula ALEXANDER, Joan Coll, and Cheryl Thompson-Sard, Plaintiffs-Appellants,
v.
SETON HALL UNIVERSITY, John J. Myers, Archbishop of Newark, President of Board of Regents, and Chair of Board of Trustees, and individually, Robert Sheeran, President and individually, Paula Buley,[1] Executive Vice President and individually, Karen E. Boroff, Dean of Stillman School of Business, and Joseph Depierro, Dean of College of Education and Human Services, Defendants-Respondents.
DOCKET NO. A-1251-08T3.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 2009.
Decided December 7, 2009.
*1129 Patricia Breuninger, Scotch Plains, argued the cause for appellants (Breuninger & Fellman, attorneys; Ms. Breuninger, on the brief).
Rosemary S. Gousman, Murray Hill, argued the cause for respondents (Fisher & Phillips, LLP, attorneys; Ms. Gousman, of counsel; David J. Treibman, on the brief).
Before Judges STERN, GRAVES and J.N. HARRIS.
The opinion of the court was delivered by
STERN, P.J.A.D.
This is a pay discrimination case based on sex and age. Plaintiffs appeal from a "consent amended final order of dismissal,"[2] dismissing the balance of their complaint after the motion judge had previously, on May 2, 2008, dismissed "the allegations of [p]laintiffs' [c]omplaint that relate to wage decisions made prior to July 27, 2005, or the impact of those decisions upon plaintiffs' salaries following July 27, 2005," two years prior to the filing of the complaint on July 27, 2007. Plaintiffs argue "the refusal of the trial court to recognize the `continuing violation' doctrine in plaintiffs' allegations of pay disparities was contrary to New Jersey law" and that the trial court "erred in holding that [the United States Supreme Court's opinion in] Ledbetter [v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007)] is controlling in the present case."
*1130 The suit was commenced by three long-time female Seton Hall University professors who alleged age and sex discrimination in pay in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 et. seq. As noted, the trial court dismissed all claims arising two or more years before July 27, 2005, the date on which the complaint was filed. Plaintiffs allege that, because discovery was not completed, they do not know when the disparity commenced, but believe it "continued" until within two years of the complaint. However, defendant Seton Hall,[3] in essence, contends that any pay discrimination was based on a "discrete act" as of the time any disparity commenced, which was outside the statute of limitations (that is more than two years before the complaint was filed), that the "continuing violation" doctrine is inapplicable, and that Ledbetter controls. We agree, and affirm the judgment substantially for the reasons stated by Judge Alfonse J. Cifelli in his oral opinion of May 2, 2008, as supplemented herein.
Because the dismissal, on statute of limitations grounds, was entered pursuant to R. 4:6-2(e), we treat the plaintiffs' allegations as true for purposes of this opinion. See Banco Popular v. Gandi, 184 N.J. 161, 165-66, 876 A.2d 253 (2005). Plaintiff Alexander began her employment at Seton Hall in 1976, has been a tenured Associate Professor in the Management Department of the Stillman School of Business since 1981, and was sixty-two years old at the time the complaint was filed. Plaintiff Coll began her employment at the University in 1981, became a tenured Full Professor, the highest rank at the University, in the Management Department of the Stillman School of Business in 1994, and was sixty-five at the time the complaint was filed. Plaintiff Thompson-Sard began her employment with Seton Hall in 1987, became a tenured Associate Professor in the College of Education and Human Services, Department of Professional Psychology and Family Therapy in 1991, and was sixty-one at the time the complaint was filed.
In the fall of 2004 and fall of 2005, Seton Hall compiled summaries of faculty information arranged by college, gender, rank, and salary. Plaintiffs obtained copies of these summaries. In their complaint plaintiffs claimed that, although they had "always suspected that men earned more" than women in the same position, they learned in August 2005, when they obtained the summaries, that this was true. They alleged that their salaries were disproportionately lower than male, "newer [and] [] younger faculty members," holding similar positions for the same or shorter periods: "[p]laintiffs claim discriminatory discrepancies between their salaries and those earned by younger and by male employees" and that "the older, tenured, higher ranking professors have suffered lost income in order for the University to finance the salaries of younger, less experienced, newer professorsmany even before becoming tenured."
Plaintiffs argue that their discrimination allegations are timely under the "continuing violations" doctrine, and that the doctrine applies to cases alleging discriminatory pay disparity. They further contend that Ledbetter, supra, 550 U.S. at 618, 127 S.Ct. at 2162, 167 L. Ed.2d at 982, a pay discrimination case arising under Title VII, 42 U.S.C.A. § 2000e et. seq., is not controlling, and that the trial court misinterpreted Ledbetter by finding that any discriminatory pay decision is a "discrete *1131 act" that could trigger the two-year statute of limitations. Plaintiffs also assert that they could not have taken action before they became aware of the discriminatory pay decisions.[4] Plaintiffs further contend that the trial court failed to specifically identify any "discrete acts" of discrimination that it found to have triggered the limitations period.
Judge Cifelli determined that Ledbetter was applicable to this case because it involved the same issue: "whether and under what circumstances the plaintiff may bring an action alleging  [] illegal pay discrimination when the disparate pay is received during the statutory limitations period but is the result of intentionally discriminatory pay decisions that occurred outside of the limitations period." He found "that once the statutory filing period is expired the present effects of a discriminatory salary decision have no present legal significance or consequences and therefore, such a decision cannot form the basis of a charge of discrimination." The judge added "that pursuant to Ledbetter, an employer's decision to set an employee's ... pay or salary is a `discrete act' that commences the running of the limitation's [sic] period." Thus, paychecks received as a result of discriminatory pay decisions occurring outside of the limitations period, which merely represented a continuing impact of those time-barred decisions, cannot form the basis for plaintiffs' complaint.
The judge further noted that allowing plaintiffs to recover for pay decisions more than two years old would defeat the purpose of the statute of limitations, especially since plaintiffs alleged they always suspected that disparities existed. Thus, the Law Division dismissed the complaint to the extent it was based on discrete discriminatory acts occurring prior to July 27, 2005, and to the extent it was based upon the present impact of those acts. As already noted, it later granted plaintiffs' motion to amend its order dismissing the complaint in its entirety because, as plaintiffs' certified, "[n]o `discrete acts' of discrimination [we]re alleged during the statute of limitations period."
A trial court's dismissal of a complaint under Rule 4:6-2-(e) for "failure to state a claim upon which relief can be granted" is reviewed under the same standard as that employed by the trial courts, Seidenberg v. Summit Bank, 348 N.J.Super. 243, 249-50, 791 A.2d 1068 (App.Div.2002), and the issue before us relating to the statute of limitations is one of law. Churchill v. State, 378 N.J.Super. 471, 478, 876 A.2d 311 (App.Div.2005).
LAD claims are subject to a two-year statute of limitations. Montells v. Haynes, 133 N.J. 282, 291-95, 627 A.2d 654 (1993). See also Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 23, 803 A.2d 611 (2002). However, claims arising before the two-year period may be valid under the "continuing violation" doctrine. "[A] plaintiff may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." Id. at 6-7, 803 *1132 A.2d 611 (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754-55 (3d Cir.1995)). See also Wilson v. Wal-Mart Stores, 158 N.J. 263, 272, 729 A.2d 1006 (1999).
To establish a "continuing violation" based on a series of discriminatory acts, a plaintiff must show that
(1) at least one allegedly discriminatory act occurred within the filing period and
(2) the discrimination is "more than the occurrence of isolated or sporadic acts of intentional discrimination" and is instead a continuing pattern of discrimination.
Upon satisfying these criteria, a plaintiff may recover for damages incurred as a result of the entire "continuing violation." In evaluating whether alleged incidents of discrimination constitute a "continuing violation," a court should consider three factors:
(i) subject matterwhether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanencewhether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.
[Bolinger v. Bell Atl., 330 N.J.Super. 300, 307, 749 A.2d 857 (App.Div.), certif. denied, 165 N.J. 491, 758 A.2d 650 (2000) (citations omitted) (text and quotations combined).]
See also United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L. Ed.2d 571, 578 (1977), in which the United States Supreme Court explained that the doctrine requires that "the emphasis [] not be placed on mere continuity; the critical question is whether any present violation exists."
Our Supreme Court initially recognized the doctrine as an exception to LAD's two-year statute of limitations in the context of a sexual harassment case, noting that "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." Wilson, supra, 158 N.J. at 271-72, 729 A.2d 1006 ("`hostile-work-environment' sexual harassment claim in context of successor liability enterprises. ..."). See also Shepherd, supra, 174 N.J. at 21, 803 A.2d 611 (applying the doctrine in context of a "hostile work environment" case).
There is no dispute that the trial court correctly held that plaintiffs could not recover if all the "discrete acts" of discrimination occurred outside the limitations period. However, the question before us is whether ongoing discriminatory pay disparities during the period constitute "continuous violations" so that plaintiffs may recover beyond the limitations period based on paychecks received during the period. Plaintiff analogous this matter to a "hostile work environment" case.
In a 1977 case involving gender-based discriminatory pay, we determined that "the act of discrimination was a continuing one" in a matter in which the Division on Civil Rights concluded each "pay period constituted a new or another violation." Decker v. Bd. of Edu. of the City of Elizabeth, 153 N.J.Super. 470, 473-74, 380 A.2d 285 (App.Div.1977), certif. denied, 75 N.J. 612, 384 A.2d 842 (1978). Similarly, in Terry v. Mercer County Bd. of Chosen Freeholders, 173 N.J.Super. 249, 252, 414 A.2d 30 (App.Div.1980), mod. on other grounds, 86 N.J. 141, 430 A.2d 194 (1981), in which female plaintiffs were allegedly paid less than males to perform the same duties, we again concluded that "[t]he payment of unequal wages" for the same duties are "`continuing violations' for purposes of determining whether a claim is barred." Id. at 253, 414 A.2d 30 (citing *1133 Decker, supra, 153 N.J.Super. at 470, 380 A.2d 285). See also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-21, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106, 122-27 (2002) (while claims arising from discrete discriminatory or retaliatory acts are barred by statute of limitations, "hostile work environment" claims are qualitatively different and on-going, and therefore actionable to the extent any part of the same "hostile work environment" practice falls within the statute of limitations).
In Shepherd, plaintiffs brought suit for "hostile work environment," retaliation, constructive discharge, negligent supervision and conspiracy in violation of LAD, based on their support of former co-workers who had filed suit against defendants. We affirmed the Law Division's dismissal of the complaint, but the Supreme Court reversed us based on the "continuing violation" doctrine. The Court adopted the United States Supreme Court's formula for the "continuing violation" doctrine in "hostile work environment" cases, as set forth in Morgan, supra, 536 U.S. at 115-18, 122 S.Ct. at 2073-75, 153 L.Ed.2d at 123-25, stating that "discrete acts" of discrimination such as failures to promote, transfer denials and refusals to hire, constitute separately actionable practices such that the limitations period begins to run "on the day that it happens." Shepherd, supra, 174 N.J. at 19, 803 A.2d 611 (citations omitted). Justice Verniero relied on Morgan, supra, 536 U.S. at 115, 122 S.Ct. at 2073-74, 153 L.Ed.2d at 123, for "the distinction between a `hostile work environment' and a claim based on a `discrete act:'"
Hostile environment claims are different in kind from "discrete acts." Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to "discrete acts," a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.
[Shepherd, supra, 174 N.J. at 19, 803 A.2d 611 (citations omitted).]
In adopting the United States Supreme Court's "analytical framework," the Shepherd Court further noted that, while in general, "federal case law is merely a guide," id. at 20, 803 A.2d 611, "[t]here [] [wa]s a benefit in having our State jurisprudence mirror the approach taken in Morgan to avoid further confusion in an already complicated area of law." Id. at 21, 803 A.2d 611. Hence, the Court found that the cause of action in Shepherd "accrued on the date of the last act in the pattern or series of acts that comprise[d] the `continuing violation' claim." Shepherd, supra, 174 N.J. at 21-22, 803 A.2d 611. Accordingly, "a victim's knowledge of a claim [was] insufficient to start the limitations clock so long as the defendant continue[d] the series of non-discrete acts on which the claim as a whole [was] based." Id. at 22, 803 A.2d 611. Thus, the "hostile work environment" claims were not barred and presented claims for the jury to decide.
Unlike the Shepherd plaintiffs, the plaintiffs here did not specifically allege a "hostile work environment." Rather, they alleged incidents of pay discrimination on the basis of age and gender, which they contend continued into the limitations period by virtue of the paychecks resulting from those decisions. Hence, we look to federal pay discrimination cases as a "guide." Id. at 20, 803 A.2d 611.
In Bazemore v. Friday, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), the United States Supreme Court considered a wage claim for disparate treatment brought by employees who were originally *1134 segregated into a "Negro branch" of the North Carolina Extension Service within the School of Agriculture of North Carolina State University. Id. at 389-91, 106 S.Ct. at 3003-04, 92 L.Ed.2d at 324-25. The "Negro branch" was eventually merged with the "white branch," but pay disparities based on the segregated system continued, even after the employer became covered by Title VII. Id. at 1390-91, 106 S.Ct. at 3004, 92 L.Ed.2d at 325. In Justice Brennan's concurrence, joined by all members of the Court,[5] the Court noted that the fact that the employer "discriminated with respect to salaries prior to the time it was covered by Title VII does not excuse perpetuating that discrimination after [it] became covered by Title VII." Id. at 395, 106 S.Ct. at 3006, 92 L.Ed.2d at 328. Thus, it determined that "[a] pattern or practice that would have constituted a violation of Title VII, but for the fact that the statute had not yet become effective, became a violation upon Title VII's effective date, and to the extent an employer continued to engage in that act or practice, [it] is liable." Ibid. The Court went on to find that "[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white" was "a wrong actionable under Title VII." Ibid. See also Cardenas v. Massey, 269 F.3d 251, 255-57 (3d Cir.2001) (referring to discriminatory wage payments as "continuing violation," and "statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first") (citation omitted).
However, the Supreme Court recently addressed the issue of discriminatory pay disparities again in Ledbetter, supra, 550 U.S. at 621, 127 S.Ct. at 2165, 167 L.Ed.2d at 988, in which it stated that "a pay-setting decision is a `discrete act'" sufficient to trigger the limitations period. In Ledbetter, the plaintiff was employed by the defendant in its Alabama plant from 1979 until 1998. She alleged that, due to unfair performance evaluations, she suffered pay discrimination on the basis of her gender throughout the duration of her employment. Id. at 621-22, 127 S.Ct. at 2165-66, 167 L.Ed.2d at 988-89. She filed a Title VII action, and asserted that each paycheck was a separate act of discrimination, id. at 624, 127 S.Ct. at 2167, 167 L.Ed.2d 982, and that the 1998 decision denying her a raise perpetrated intentionally discriminatory decisions from prior years. Ibid. As in this case, Goodyear argued that the plaintiff's claims were "barred with respect to all pay decisions made prior to" the commencement of the limitations period. Id. at 622, 127 S.Ct. at 2166, 167 L.Ed.2d at 989. However, rather than assert that her employer acted with specific discriminatory intent during the limitations period, the plaintiff contended that "if she had been evaluated in a non-discriminatory manner prior to the [] period[,]" her paychecks would have been larger during the period. Id. at 624, 127 S.Ct. at 2167, 167 L.Ed.2d 982.
The Ledbetter Court determined that precedent prohibited a finding that a discrimination charge could survive if based on a discriminatory act occurring outside of the limitations period if only the effects of that discrimination continued into the period. Id. at 625, 127 S.Ct. at 2167, 167 L.Ed.2d at 990. It explained that in Evans it noted "that the continuing effects of the precharging period discrimination did not make out a present violation[,]" Evans, supra, 431 U.S. at 558, 97 S.Ct. at 1889, 52 L.Ed.2d at 578. Ledbetter, supra, 550 U.S. at 625, 127 S.Ct. at 2168, 167 L.Ed.2d at 991. The Ledbetter Court then stated that *1135 "`[a] discriminatory act which is not made the basis of a timely charge ... is merely an unfortunate event in history which has no present legal consequences.'" Id. at 625-26, 127 S.Ct. at 2168, 167 L.Ed.2d at 991 (quoting Evans, supra, 431 U.S. at 558, 97 S.Ct. 1885, 52 L.Ed.2d 571). The Court noted that the plaintiff failed to assert either the existence of any "intentionally discriminatory conduct" during the limitations period "or that discriminatory decisions that occurred prior to that period were not communicated to her." Ledbetter, supra, 550 U.S. at 628, 127 S.Ct. at 2169, 167 L.Ed.2d at 992. She argued instead that the paychecks she received during the limitations period "gave present effect to discriminatory conduct outside of that period," an assertion which the Court found could not "breathe life into prior, uncharged discrimination." Ibid.[6] According to Justice Alito for the majority:
A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent non[-]discriminatory acts that entail adverse effects resulting from the past discrimination. But of course, if an employer engages in a series of acts each of which is intentionally discriminatory, then a fresh violation takes place when each act is committed.
[Ibid. (quoting Morgan, 536 U.S. at 113, 122 S.Ct. 2061).]
In other words, the Court found that the discriminatory intent of time barred prior acts cannot be combined with the effects of the prior discrimination, to "impose liability in the absence of the requisite intent." Ledbetter, supra, 550 U.S. at 629, 127 S.Ct. at 2170, 167 L.Ed.2d at 993.
The Ledbetter Court also discussed Bazemore, supra, 478 U.S. at 385, 106 S.Ct. at 3000, 92 L.Ed.2d at 315, at length, interpreting its holding to mean that "when an employer adopts a facially discriminatory pay structure that puts some employees on a lower scale because of race, the employer engages in intentional discrimination whenever it issues a check to one of these disfavored employees." Ledbetter, supra, 550 U.S. at 634, 127 S.Ct. at 2173, 167 L.Ed.2d at 996. Thus, so long as a discriminatory pay structure is adopted and retained, continued use of that structure equates with continued discrimination. Ibid. Stated differently, an existing salary structure "is illegal if it is a mere continuation of [a] discriminatory pay structure." Bazemore, supra, 478 U.S. at 397 n. 6, 106 S.Ct. at 3006 n. 6, 92 L.Ed.2d at 329 n. 6. However, the Ledbetter Court distinguished Bazemore as follows:

Bazemore stands for the proposition that an employer violates Title VII and triggers a new EEOC charging period whenever the employer issues paychecks using a discriminatory pay structure. But a new Title VII violation does not occur and a new charging period is not triggered when an employer issues paychecks pursuant to a system that is "facially non[-]discriminatory and neutrally applied." The fact that [the] precharging period discrimination adversely affects the calculation of a neutral factor (like seniority) that is used in determining future pay does not mean that each new paycheck constitutes a new violation and restarts the EEOC charging period.
[Ledbetter, supra, 550 U.S. at 637, 127 S.Ct. at 2174, 167 L.Ed.2d at 998 (citations omitted).]
*1136 Because the plaintiff in Ledbetter was unable to provide evidence that her employer's pay system was adopted "in order to discriminate" or that it applied the system "to her within the charging period with any discriminatory animus," paychecks issued during the charging period were merely the effect of discriminatory acts that occurred outside the period and, therefore, did not support a timely cause of action. Ibid. Thus, the Court refused to adopt the rule attributed to the dissent that would allow a plaintiff to bring a claim based on "a single discriminatory pay decision made [twenty] years ago [that] continued to affect [the] employee's pay" during the limitations period. Id. at 639, 127 S.Ct. at 2175, 167 L.Ed.2d at 999.
As our Supreme Court has followed Title VII jurisprudence in interpreting our LAD, we follow the United States Supreme Court's holding in Ledbetter in this similar pay discrimination case. If each new paycheck stemming from an out-of-time discriminatory act constituted a new violation, there would be no meaningful statute of limitations so long as the plaintiffs were being paid. As in Ledbetter, plaintiffs do not allege "discrete acts" of discrimination within the limitations period. Nor, as in Bazemore, do they allege facial or intentional discrimination when the disparity began. Accordingly, we affirm the dismissal of plaintiffs' complaint on statute of limitations grounds. However, that does not end this case.
Significantly, in response to the United States Supreme Court's decision in Ledbetter, Congress amended Title VII to include provisions known as the Lilly Ledbetter Fair Pay Act of 2009 (FPA). It provides that "an unlawful employment practice [] with respect to ... compensation [occurs]... when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation [are] paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C.A. § 2000e-5(e)(3)(A). Congress also allowed for "recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." 42 U.S.C.A. § 2000e-5(e)(3)(B).
The three counts of plaintiffs' complaint are premised on LAD, but plaintiffs may well benefit from the federal FPA that did not exist when the complaint was dismissed. We recognize that as our LAD cases follow federal Title VII jurisprudence only as a "guide," Shepherd, supra, 174 N.J. at 20, 803 A.2d 611, and our pre-Ledbetter cases can be read to support plaintiffs' contentions. Hence, there is some merit for the proposition that we should not follow Ledbetter.[7] However, we believe that we would be more faithful to our state jurisprudence by following Ledbetter, particularly in the absence of a *1137 post-Ledbetter amendment to LAD. We thus follow Title VII and LAD jurisprudence as it stood at all relevant times because no amendments have been made to the LAD which would affect its construction at the time when Ledbetter was decided. See also Alliance v. Renaissance Enterprises, 371 N.J.Super. 409, 422-23, 853 A.2d 334 (App.Div.2004), aff'd, 185 N.J. 339, 886 A.2d 629 (2005) ("there is a distinction between a continuing effect [of a `prior violation'] and a `continuing violation' and to treat them as synonymous is to disregard any period of limitations.").
The judgment is affirmed.
NOTES
[1] This name was incorrectly identified in original caption as "Beuhle."
[2] Plaintiffs moved to dismiss the balance of the complaint because the order "effectively dismisses the entire [c]omplaint since nothing remains to be pursued. No `discrete acts' of discrimination are alleged during the statute of limitations period." The order therefore states the "[c]omplaint [] relate[s] to wage decisions made prior to July 27, 2005, or have been remedied by wage adjustments made at or after the filing of the complaint." Thus, there is no issue of finality caused by the voluntary dismissal of part of the complaint. Cf. Grow Co., Inc. v. Chokshi, 403 N.J.Super. 443, 457-61, 959 A.2d 252 (App.Div.2008).
[3] Because the individual defendants are all Seton Hall officials, we refer to all defendants as Seton Hall or defendant.
[4] At oral argument before us, plaintiffs candidly and appropriately acknowledged that this was not a "discovery rule" case as they had information concerning the alleged discrimination more than two years before the complaint was filed. See e.g., Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973). Judge Cifelli outlined the facts concerning their knowledge in his opinion, and referred to Seton Hall's publications at relevant times. Plaintiffs had at least reasonable notice of an obligation to investigate their claims sooner. See Baird v. Am. Med. Optics, 155 N.J. 54, 66-68, 713 A.2d 1019 (1998). Hence, they must succeed under the "continuing violation" doctrine in order to go forward with their case.
[5] The per curiam opinion announced the judgment and that the concurring opinions of Justices Brennan and White constituted the opinion of the Court.
[6] Of interest, the Ledbetter Court cited the very portion of Morgan relied upon in Shepherd.
[7] The FPA includes Congressional findings that Ledbetter "significantly impairs statutory protections against discrimination in compensation that Congress established" and the title notes that the Act "clarif[ies]" that a discriminatory act occurs everytime "compensation is paid pursuant to the [prior] discriminatory compensation decision ..." As plaintiffs do not rely on the FPA amendment or address the legislative history or findings, we do not develop the impact of the FPA Legislative history as part of the guide to our interpretation of LAD.