J-A15028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| OTTO SLOZER AND JOHN DONCHES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| PATRICK SLATTERY; WESLEY BARRETT; CRAIG NEELY; CITIZENS FOR STRONG COMMUNITIES; JENAE WOLFE HOLZHAFER; INTERNET POSTER 1 A/K/A "CARIBBEAN QUEEN" AND JOHN AND JANE DOE 2-10 | |
| Appellees | No. 2566 EDA 2014 |

Appeal from the Order Entered August 22, 2014
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2012 C 1603

BEFORE:  BOWES, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                **FILED NOVEMBER 18, 2015**

Appellants, Otto Slozer and John Donches, plaintiffs in the underlying

defamation suit, appeal from the August 22, 2014 order granting the various

motions for summary judgment filed by Appellees, Patrick Slattery, Wesley

Barrett, Craig Neely, Citizens for Strong Communities (Citizens), and Jenae

Wolfe Holzhafer,[1] the named defendants in the defamation suit, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Ms. Holtzhafer noted in her motion for summary judgment that her name had been misspelled as "Holzhafer" throughout the proceedings.  Because the rest of the record retains the "Holzhafer" spelling, we have done the same for the sake of consistency.

J-A15028-15

dismissing Appellants' complaint with prejudice. After careful consideration, we affirm.

The trial court supplied the following summary of the factual and procedural background in this case.

[T]he relevant facts are as follows.

In the context of a local municipal election in the Borough of Emmaus in the fall of 2011, [] Slattery -- through an organization he headed, [] Citizens [] -- published a website entitled "Ottosback.com" in reference to [] Slozer. Slozer had previously served as an elected member of the Emmaus Borough Council in 1990-1999, including service in the office of Borough Council President for three of those years. He subsequently ran unsuccessfully for Council in 2003.

After leaving office, Slozer has continued to be visibly engaged in Emmaus politics and controversies. To that end, he has served on the board of directors of an activist group, entitled, "Concerned East Penn Taxpayers Association" ("CEPTA"), which, among other things, has publicly advocated against public spending and has hosted candidate debates, some of which Slozer himself has moderated. Additionally, Slozer regularly writes for a local newspaper entitled *The Lehigh Valley Commentator*, which received startup funding from CEPTA. In his own words, Slozer uses that forum "to get [his] point of view out," and claims it has a circulation of 13,000. It also appears undisputed that Slozer's local reputation has been acknowledged by a prominent weekly columnist in the Lehigh Valley's largest commercial newspaper, The Morning Call, who has recognized Slozer as a member of the columnist's informal Hall of Fame of "famous people from the Lehigh Valley," in which Emmaus is located.

The aforementioned website, "Ottosback.com," published materials indicating that two of the then-

- 2 -

current candidates for Emmaus Borough Council, including [] Donches, were affiliated with Slozer, and indicated that a vote for these persons would be tantamount to a vote for Slozer. In urging viewers not to vote for Donches and the other candidate, the website offered negative commentary about Donches and Slozer. [Appellants] base the present defamation action upon the substance of several of those comments which, [Appellants] allege, accused Donches of being a thief by taking a DVD not belonging to him and stealing campaign signs, assaulting a man in a road rage incident, and suffering from mental illness. [Appellants] also maintain that the website falsely accused Slozer of mental illness as well.

In April 2012, [Appellants] filed suit against, *inter alia*, [] Slattery[, Holzhafer,] and Citizens [] as well as several unidentified "John Doe" Defendants. Although the website was online from October 2011 through [E]lection [D]ay in November 2011, [Appellants] did not name [] Neely and [] Barrett until the filing of a second amended complaint in July 2013, well beyond the one-year period of limitation applicable to defamation actions, as provided in 42 Pa.C.S. § 5523(1). Hence, [on May 16, 2014, and May 23, 2014,] those defendants move[d respectively] for summary judgment on that basis. [] Holzhafer, on May 30, 2014,] move[d] for summary judgment on different grounds, arguing that merely posting a link on one's website without substantive commentary will not constitute a publication of the allegedly defamatory material contained on the linked site.

[On May 29, 2014,] [] Slattery and []Citizens [] move[d] for summary judgment for other reasons, contending that, as a matter of law, the materials set forth are incapable of defamatory meaning as factual allegations. In particular, these [Appellees] argue that the comments about Slozer's personality and mental traits, which appeared on the website, were merely opinions and otherwise fair game in the rough-and-tumble world of politics. As such, they

- 3 -

contend the statements are not actionable. Additionally, they argue that, in view of the public-figure status of both [Appellants], there is insufficient evidence of actual malice, in the form of evidence that [Appellees] knew the statements were false or acted in reckless indifference to the truth of any matter published. More specifically, Slattery points to evidence indicating that Donches has admitted in deposition that he did verbally confront and grab a motorist in a traffic altercation and that he did, in fact, take possession of the subject DVD without permission, thereby justifying the allegation that Donches stole property, as alleged in the website. Slattery contends that in light of these admissions, he cannot be deemed to have acted in reckless disregard of the truth. Finally, in relation to the campaign signs, Slattery maintains he never accused Donches of stealing these materials. Rather, he insists that [Appellants'] reading of the website referencing removal of political signs represents a mischaracterization of the information actually published.

Trial Court Opinion, 8/22/14, at 2-4 (citations omitted).

Argument on the various motions for summary judgment was held on August 20, 2014. On August 22, 2014, the trial court issued an order granting all of the Appellees' various motions for summary judgment and dismissing Appellants' claims with prejudice. Appellants filed a timely notice of appeal on September 9, 2014.[2]

_____

[2] Appellants and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellants raise 18 overlapping issues in the "questions presented for review" section of their brief.[3] However, the Argument section of their brief is divided into only five sections with alternatively phrased headings describing the issues addressed in each section. This fails to comply with the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. *See Graziani v. Randolph*, 856 A.2d 1212, 1216 (Pa. Super. 2004) (noting a brief containing argument sections that do not clearly correspond to the questions presented violates Rule 2116(a)). However, to the extent Appellants' arguments essentially streamline and subsume the issues articulated in his questions presented, we will address them as presented in their argument section. *See Lundy v. Manchel*, 865 A.2d 850, 855 (Pa. Super. 2004) (addressing the merits of appellants arguments to the extent they were similar to the questions presented). The issues so described in the argument section are as follows.

> A. [Whether t]he trial court erred in its conclusion that the website www.ottosback.com did not defame [Appellants] when the allegations of criminal activity and mental illness attributed to Appellants was demonstrably false and done with malice[?]
>
> B. [Whether] [] Donches was falsely accused of theft of campaign signs by [] Slattery in another

---

[3] The statement of questions presented for review are identical to those posed in Appellants' Rule 1925(b) statement. *See* Appellants' Brief at 2-4, and Rule 1925(b) Concise Statement, 9/25/14, at 1-2. Nevertheless, for the reasons explained above we elect to address the issues as argued by Appellants in their appellate brief.

Internet posting and thereby defamed Candidate Donches[?]

C. [Whether] [] Slozer is a private person for purposes of this action[?] [Whether] Donches is a public figure[?]

D. [Whether] Defamation through social media, Facebook, is a novel question in Pennsylvania[?]

E. [Whether] [] Neely and Barrett are proper defendants in this matter[?]

Appellants' Brief at 6, 13, 15, 19-20.

We begin by acknowledging the standard of review governing our consideration of this appeal. "[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." ***Petrina v. Allied Glove Corp.***, 46 A.3d 795, 797-798 (Pa. Super. 2012) (citations omitted). "We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." ***Barnes v. Keller***, 62 A.3d 382, 385 (Pa. Super. 2012), *citing* ***Erie Ins. Exch. v. Larrimore***, 987 A.2d 732, 736 (Pa. Super. 2009) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." ***Id.*** The rule governing summary judgment has been codified at Pennsylvania Rule of Civil Procedure 1035.2, which states as follows.

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

"Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." ***Babb v. Ctr. Cmty. Hosp.***, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citations omitted)*, appeal denied*, 65 A.3d 412 (Pa. 2013). Further, "failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." ***Id.***

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima

facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Id.*, *citing* **Reeser v. NGK N. Am., Inc.,** 14 A.3d 896, 898 (Pa. Super. 2011), *quoting* **Jones v. Levin,** 940 A.2d 451, 452–454 (Pa. Super. 2007) (internal citations omitted).

In a defamation case, the plaintiff has the burden of proof on the following elements.

**§ 8343. Burden of proof**

**(a) Burden of plaintiff.--**In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

…

42 Pa.C.S.A. § 8343(a).

We proceed to address the merits of Appellants' issues, albeit in a different order than presented in their brief. As related above, each motion for summary judgment filed by the various Appellees sought relief on distinct grounds. Appellants' issue "E" addresses the trial court's grant of the motion for summary judgment brought by Neely and Barrett on the grounds the action against them was barred by the statute of limitations. Appellants' Brief at 20. The parties acknowledge that the applicable statute of limitations for Appellants' defamation action requires commencement within one year.[4] *Id.* Appellants assert that, with respect to Neely and Barrett, their inclusion of "John Doe" as an unknown defendant responsible for creation and dissemination of the offending website within the one-year period is sufficient to satisfy the statute when they promptly amended the complaint to add Neely and Barrett by name upon learning of their identity. Appellants' Brief at 23.

> [Appellants] speculated that there were others involved in the campaign and website but had no hard evidence to prove that Neely and Barrett were involved. [Appellants] timely filed their initial

---

[4] The statute provides as follows.

### § 5523. One year limitation

The following actions and proceedings must be commenced within one year:

(1) An action for libel, slander or invasion of privacy.

42 Pa.C.S.A. § 5523(1).

complaint in April 2012 naming John and Jane []Does [] to preserve the statute of limitations, regarding the possible existence of other defendants whose involvement came to light as the case progressed.

…Assuming the propriety of the John Doe filing in the original complaint filed in April 2012, the action was timely filed within the one year statute of limitations. The ultimate discovery of the identity of the creators of the website came in April 2013. Plaintiffs promptly filed a motion to amend the complaint to add Neely and Barrett which [the trial c]ourt allowed. The amended complaint was then filed after the motion was granted on July 17, 2013.

*Id.* at 20, 23.

Appellants alternatively suggest the statute did not commence until they discovered not only the injury from the alleged defamation but the identity of the persons responsible. *Id.* at 22. "However, [] Neely and Barrett solely focus on the date of discovery of the injury which covers a time period from October 12, 2011 through November 8, 2011. The problem is that [Appellants] in this case did not know who caused the injury beyond Citizens [], [] Slattery and [] Holzhafer." *Id.* Finally, Appellants make reference to the application of the "discovery rule," outlining their due diligence in ascertaining the identity of Neely and Barrett, and the lack of cooperation of the Appellees in that effort. *Id.* at 20-21.

Generally, a statute of limitations period begins to run when a cause of action accrues; *i.e.,* when an injury is inflicted and the corresponding right to institute a suit for damages arises. It is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform him-or

> herself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period. Generally, once the prescribed statutory period has expired, the complaining party is barred from bringing suit.

*Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). Contrary to Appellants' implication, neither the commencement of the running of a statute of limitations, nor the application of the "discovery rule" is dependent on a plaintiff's knowledge of the identity of the individual causing the injury.

> [T]he general rule that a cause of action accrues, and thus the applicable limitations period begins to run, when an injury is inflicted. In certain cases involving latent injury, and/or instances in which the causal connection between an injury and another's conduct is not apparent, the discovery rule may operate to toll the statute of limitations until the plaintiff discovers, or reasonably should discover, that she has been **injured** and that her **injury** has been caused by another party's conduct.

*Wilson v. El-Daief*, 964 A.2d 354, 361-362 (Pa. 2009) (citations omitted; emphases added).

Instantly, it is undisputed that Appellants became aware of the alleged defamatory statement in the website and of their alleged injury therefrom by at least November of 2011. Trial Court Opinion, 8/22/14, at 5. Appellants did not add Neely and Barrett to the amended complaint until July 24, 2013, well after the one-year limitation triggered by Appellants' discovery of their injury and cause of action. **See Gleason**, **supra**. Further, their inability to identify Neely and Barrett did not toll the running of the statute of limitation as to those Appellees. **See Wilson**, **supra**.

We also conclude that the filing of a "John Doe" complaint did not bring Appellants into compliance with the one-year period to commence an action against Neely and Barrett. An unidentified "John Doe" defendant, who has not been served or entered an appearance, is not a legal party to a suit. *Weiley v. Albert Einstein Med. Ctr*, 51 A.3d 202, 215 (Pa. Super. 2012). This Court has noted its disagreement with the "proposition that a defendant can be named as "John Doe" in the original complaint and later the plaintiff can substitute the real name after the defendant's true identity has been discovered even though the statute of limitations has expired." *Anderson Equip. Co. v. Huchber*, 690 A.2d 1239, 1242 (Pa. Super. 1997); *see also Commonwealth v. Laventure*, 894 A.2d 109, 116-117 (Pa. 2006) (applying the same principles in disapproving of the Commonwealth's attempt to substitute in an amended complaint a known named defendant for the "John Doe" defendant named in the original complaint after the expiration of the applicable statute of limitations). Appellants here attempt to do precisely what this Court disallowed in *Anderson*. Accordingly, we conclude the trial court properly granted Neely and Barrett's motions for summary judgment because Appellants cannot state a valid claim against them. *See Barnes*, *supra*.

In their issue "D", Appellants fault the trial court for granting Holzhafer's motion for summary judgment on the grounds that her only action was a mere posting of a link to the site without substantive

commentary, and therefore does not constitute publication of the alleged defamatory statement. Appellants' Brief at 15. Further, Appellants argue that Holzhafer, although not a party to the composing and initial publishing of the allegedly defamatory statements, did more than merely link to the "ottosback" website. They assert that by "liking" the link on her Facebook page, Holzhafer communicated her attitude to the substance of the referenced article, sufficient to be considered a republication of the alleged defamation. *Id.* at 17. Accordingly, Appellants argue Holzhafer's posting of a link to the allegedly defamatory article accompanied with a "like" designation is sufficient republication of the defamatory statements to create a cause of action against Holzhafer. *Id.* We disagree.

Citing *In re Phila. Newspapers, LLC*, 690 F.3d 161, 173-175 (3d Cir. 2012) and the Restatement (Second) of Torts §§ 577, 581, the trial court concluded "the mere posting of a link on one's website without substantive commentary will not constitute a republication of any linked materials so as to state a claim for defamation." Trial Court Opinion, 8/22/14, at 6. Specifically, the trial court described Holzhafer's link and attendant comments on her Facebook page as follows. "In this case, the only statement uttered by Holzhafer consisted of a reference to the website coupled with the following exhortation: 'Oh, politics … this is when I'd like to fast forward to November 9 and know what the future holds! This election is critical. Please get out and vote!'" *Id.* The trial court concluded that

- 13 -

"[u]nder any reasonable assessment, this cannot be deemed a publication of any underlying defamatory material that may or may not appear at the linked website." *Id.*

In **Phila. Newspapers**,[5] the Third Circuit Court of Appeals noted that "Pennsylvania courts have not considered whether the single publication rule applies to Internet publication."[6] **Phila. Newspapers**, **supra** at 174. The

---

[5] We recognize "pronouncements of the lower federal courts have only persuasive, not binding, effect on the courts of this Commonwealth—although we certainly are bound by the decisions of the U.S. Supreme Court on questions of federal law." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and Eng'rs, Inc.*, 119 A.3d 1070, 1078 n.6 (Pa. Super. 2015).

[6] Pennsylvania has adopted the "single publication rule" by statute.

**§ 8341. Single publication limitation**

**(a) Short title of section.--**This section shall be known and may be cited as the "Uniform Single Publication Act."

**(b) General rule.--**No person shall have more than one cause of action for damages for libel or slander, or invasion of privacy, or any other tort founded upon any single publication, or exhibition, or utterance, such as any one edition of a newspaper, or book, or magazine, or any one presentation to an audience, or any one broadcast over radio or television, or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

**(c) Bar by judgment.--**A judgment in any jurisdiction for or against the plaintiff upon the substantive merits of any action for damages

*(Footnote Continued Next Page)*

J-A15028-15

Third Circuit noted that under the rule, only one cause of action for a single publication of defamatory statements may be brought, regardless of the extent or timing of any circulation of that publication. *Id.* Republication of the same content, however, may provide a new cause of action if it constitutes a new edition of the defamatory material. *Id.* "Additionally, under traditional principles of republication, a mere reference to an article, regardless how favorable it is as long as it does not restate the defamatory material, does not republish the material." *Id.* at 175 (citation omitted).

> Traditional principles of republication thus require the retransmission of the allegedly defamatory material itself for the doctrine to apply. However, courts addressing the doctrine in the context of Internet publications generally distinguish between linking, adding unrelated content, or making technical changes to an already published website

*(Footnote Continued)* _____

> founded upon a single publication, or exhibition, or utterance, as described in subsection (b), shall bar any other action for damages by the same plaintiff against the same defendant founded upon the same publication, or exhibition, or utterance.

42 Pa.C.S.A. § 8341.

> Pennsylvania established this rule in response to the concern that a contrary rule would render any statute of limitations "meaningless in that an action could be filed any time a defamatory article was read, no matter the time lag between the actual printing of the article and the reading of the article by a third party." *Graham v. Today's Spirit*, 503 Pa. 52, 468 A.2d 454, 457 (1983).

*McClenaghan v. Turi*, 567 F. App'x. 150, 153-154 (3d Cir. 2014).

- 15 -

(which they hold is not republication), and adding substantive material related to the allegedly defamatory material to an already published website (which they hold is republication).

Several courts specifically have considered whether linking to previously published material is republication. To date, they all hold that it is not based on a determination that a link is akin to the release of an additional copy of the same edition of a publication because it does not alter the substance of the original publication. ***See***, ***e.g.***, ***Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.***, No. 02–02258, 2007 WL 935703 (S.D.Cal. Mar. 7, 2007); ***Churchill v. State of N.J.****,* 378 N.J. Super. 471, 876 A.2d 311 (2005).

***Id.*** at 174.

We agree with the reasoning of the Third Circuit and conclude it accurately reflects Pennsylvania law regarding the doctrines of single publication and republication in defamation actions as they apply to internet communications. We further conclude the trial court correctly applied those principles to the facts of the instant case. Holzhafer, by providing a link to the challenged posting, without reiterating the content of that posting did not initiate a republication. Her motivations and her designation of the link with a "like" as alleged by Appellants, is not equivalent to a reiteration of the defamatory content as to constitute republication. ***See Phila. Newspapers***, ***supra*** at 174. Accordingly, we determine Appellants' issue "D" to be without merit and discern no error by the trial court in granting Holzhafer's motion for summary judgment.

We proceed to address Appellants' issue "C", wherein Appellants assert the trial court erred in determining that Slozer is a public figure. Appellants' Brief at 13. "The classification of a plaintiff as a public or private figure is a question of law to be determined initially by the trial court and then carefully scrutinized by an appellate court." *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 339, (Pa. Super. 2008) (internal quotation marks and citations omitted) (*Joseph I*). "[O]ur review of this issue is plenary, as it involves a question of law." *Brown v. Phila. Tribune Co.*, 668 A.2d 159, 162 (Pa. Super. 1995), *appeal denied*, 675 A.2d 1241 (Pa. 1996), *cert. denied*, 519 U.S. 864 (1996).

A plaintiff's status as a public figure will affect his or her burden in a defamation case. "If the plaintiff is a public official or public figure, [he or] she must prove also that the defendant, in publishing the offending statement, acted with actual malice, *i.e.* with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 260-261 (Pa. Super. 2014) (citation omitted) (*Joseph II*), *appeal granted*, 105 A.3d 655 (Pa. 2014). A public-figure plaintiff must meet that burden by clear and convincing evidence. *Tucker v. Phila. Daily News*, 848 A.2d 113, 127-128 (Pa. 2004).

"Because one individual's speech has the ability to harm another person's reputation, there is an inevitable tension in the law between the

goals of protecting freedom of expression and safeguarding reputation from unjust harm." ***Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.***, 923 A.2d 389, 395 (Pa. 2007) (additional citation omitted), *citing*, ***Gertz v. Robert Welch, Inc.***, 418 U.S. 323, 342 (1974). Thus, the United States Supreme Court determined as follows.

> If the plaintiff is a public official or public figure… and the statement relates to a matter of public concern, then to satisfy First Amendment strictures the plaintiff must establish that the defendant made a false and defamatory statement with actual malice. In contrast, states are free to allow a private-figure plaintiff to recover by establishing that the defendant acted negligently rather than maliciously.

*Id.* at 400 (citations omitted). Our Supreme Court has determined that "in the context of defamation law the state Constitution's free speech guarantees are no more extensive than those of the First Amendment." *Id.* (citations omitted).

> [T]he First Amendment does not force states to require a showing of actual malice where a private person's reputation is harmed, even where the speech pertains to a matter of public or general interest. Accordingly, this Court has… recognized that any focus on whether the speech is of public or private concern has been replaced by an inquiry into whether the plaintiff is a public or private figure.

*Id.* at 399 (citations omitted).

> [T]he classification as a public figure arises in two circumstances: first, referring to an "all purpose" public figure, the Court explained that, in some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. Alternatively, a

limited purpose public figure," which according to the Court is more common, is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. To determine such status, the Court instructed that it is necessary to consider the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.

Traditionally, a plaintiff could only be considered a limited-purpose public figure relative to a pre-existing controversy in which he elected to participate. [H]owever… a controversy may be created by a plaintiff's own activities, particularly with respect to widespread public solicitation and advertisements.

*Id.* at 401-402 (some internal quotation marks and citations omitted). "[I]nquiries into limited-purpose public figure status are particularized and fact-sensitive." *Id.* at 404. "[T]he requirement that the plaintiff be able to show actual malice by clear and convincing evidence is initially a matter of law. The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Tucker*, *supra* at 130.

Appellants concede that Donches, as a candidate for election to public office is a public figure for the purposes of this case. Appellants' Brief at 13. Our review is therefore confined to the trial court's determination that Slozer is a limited-purpose public figure. *Id.* at 14.

Slozer was a public official until 2000. He is still a concerned citizen. But he is a private person for purposes of the legal analysis here. The [trial] court['s] [] conclusion that Slozer is a public figure

- 19 -

based upon his activities carried on 14 years ago and Slozer's participation in community affairs between 2000 and 2011 simply do not meet the … test to determine a public figure status.

*Id.* at 14. In support of his argument, Slozer quotes *Gertz* as follows.

"We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality **for all aspects** of his life."

*Id.* at 14-15, *quoting* *Gertz*, *supra* at 352 (emphasis added).

The trial court, however did not find Slozer a public figure for all aspects of his life. Trial Court Opinion, 8/22/14, at 9. Rather, the trial court tailored its finding to the particular circumstances surrounding the alleged defamation. *Id.* The trial court explained as follows.

[I]n view of his unquestionably public role in the relevant community of Emmaus, Slozer must also be deemed a public figure for purposes of a defamation analysis in the circumstance at issue in this case. This conclusion is further compelled by the fact that the statements at issue here are directly connected to, and concerned with, criticisms of Slozer's record in his elected position in Emmaus municipal government. Although it cannot be said that one categorically renounces a private life in all respects upon taking public office, it is but a truism to acknowledge that public actions by a public servant remain of legitimate public concern even after an official leaves office. And where such an official continues to participate vocally in public affairs, he may not so easily dissociate himself from his role as a "public figure." On the present facts, there is, therefore, no question that in the relevant community of Emmaus, Plaintiff Slozer maintained

the status of public figure during the 2011 campaign season for the purposes of defamation law.

*Id.* at 8-9.

Our review of the record leads us to the same conclusion.

> A person may become a limited purpose public figure if he thrust[s] himself into the vortex of the discussion of pressing public concerns. Such a person uses purposeful activity to thrust his personality into a public controversy. He becomes a limited purpose public figure because he invites and merits attention and comment. A person may become a limited purpose public figure if he attempts to have, or realistically can be expected to have, a major impact on the resolution of a specific public dispute that has foreseeable and substantial ramifications for persons beyond its immediate participants. A private individual, however, is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention.

*Joseph I*, *supra* at 339 (internal quotation marks and citations omitted).

Here the record supports the conclusion Slozer, in the time since his stint as council member continued to advocate issues and publically organize to advance his political agenda. *Cf. Brown*, *supra* at 162 (holding dentist who was thrust into controversy over his actions by press reports was not thereby rendered a public figure). For these reasons we conclude the trial court did not err in treating Slozer as a public figure for the purposes of this case.

Finally, in their issues "A" and "B," Appellants challenge the trial court's findings that the posting by Slattery and Citizens on the website

ottosback.com from about October 8, 2011 to November 11, 2011, was not capable of defamatory meaning where the same falsely claimed Appellants engaged in criminal behavior and/or suffered from psychiatric illnesses. Appellants' Brief at 6-13.

"Whether a communication can be construed to have a defamatory meaning is a question of law for the court to determine." *Joseph II.*, *supra* at 262 (citation omitted). "If the court determines that the challenged [communication] is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." *Weber v. Lancaster Newspapers, Inc.*, 878, A.2d 63, 78 (Pa. Super. 2005) (citation omitted), *appeal denied*, 903 A.2d 539 (Pa. 2006). "[H]owever, if there is an innocent interpretation and an alternate defamatory interpretation, the issue must proceed to the jury." *Krajewski v. Gusoff*, 53 A.3d 793, 803 (Pa. Super. 2012) (emphasis and citation omitted), *appeal dismissed*, 84 A.3d 1057 (Pa. 2014).

The determination of whether a statement is defamatory turns on "if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Id.* (citations omitted). Further, when considering whether a communication is slanderous, "the Court must determine the effect of the communication in the minds of average people amongst whom the communication is intended to circulate." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 484 (Pa. Super. 2007) (citation omitted), *appeal denied*, 947 A.2d

738 (Pa. 2008). A statement is "defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his business." ***Constantino v. Univ. of Pittsburgh***, 766 A.2d 1265, 1270 (Pa. Super. 2001) (citation omitted). "It is not enough that the victim of the [statements] … be embarrassed or annoyed, he must have suffered the kind of harm which grievously fractured his standing in the community." ***Kurowski v. Borroughs***, 994 A.2d 611, 617-618 (Pa. Super. 2010) (citations omitted), *appeal denied*, 12 A.3d 752 (Pa. 2010).

The internet website at issue addressed Donches' candidacy for a seat on the Borough Council for Emmaus Borough and sought to expose his political connection with Slozer, a past Borough council member. Complaint, 4/16/12, Exhibit A at 1-5. In addition to characterizations of Donches and Slozer's supposed political positions and philosophy, the website contained the following assertions, which Appellants claim are defamatory. In headline fashion to a section discussing Donches, Slattery and Citizens, the website included the following statements: "Stole Borough property in 2010," and "Assaulted a man in Lower Macungie." ***Id.*** at 1. The posting continued in paragraph form as set forth below.

> Meet John Donches: John made headlines late last year after he kindly stole Borough property from the Service Electric TV studios in a delusional panic in which he thought his wife's comments at a public meeting were altered. Borough Council decided to let a man who suffers from unmedicated mental health issues walk away scott-free [sic], apparently compassionate about his untreated condition. It was

not John's only bout with the law. John was summoned to court after assaulting a man in a road rage incident in Lower Macungie Township in which he violently ripped a man out of the front window of his truck after driving close to John and his wife, who were bicycling outside, blocking the road and travel lane. John SNAPPED and darted after the driver until he came to a stop. John assaulted the man at which point the State Police arrived. John's rage is well known among ex-friends and those who watch council meeting online or attend them in person. Watching his blood boil and his face turn intense shades of red as he represses a tantrum would be funny if it wasn't so scary to think that such an unstable man is a proud card carrying NRA member. Lock your doors!

*Id.* at 1-2.

In like fashion, the section addressing Slozer, commenced with the following.

Meet Otto Slozer: Just thinking of <u>Otto Slozer</u> is reminiscent of a psychological vocab test.

<u>Megalomania</u>: A delusional mental disorder that is marked by feelings of personal omnipotence and grandeur.

<u>Paranoia</u>: a psychosis characterized by systematized delusions of persecution or grandeur usually without hallucinations.

<u>Delusional</u>: A persistent false psychotic belief regarding the self or persons or objects outside the self that is maintained despite indisputable evidence to the contrary.

*Id.* at 5.

Appellants, with regard to the mental health references contained in the website, argued as follows.

> The Ottosback website says that [] Slozer suffers from a variety of mental illnesses as defined in the DSM. These were not mere opinion as the Court below suggests. They were offered as facts by the defendants without any basis in reality. Similarly, allegations of mental illness are leveled against [] Donches.

Appellants' Brief at 7. The trial court found, to the contrary, that the website's references to the Appellants' mental health were not capable of defamatory meaning.

> Although hardly a lofty exposition of the issues evidently at the forefront of the campaign -- much less a shining example of political pamphleteering worthy of the heritage bestowed by Paine and his erudite cohort of Founding Fathers -- the statements about Donches and Slozer are nevertheless not capable of defamatory meaning as a matter of law. Properly viewed in the context in which they appear, the references to Donches' and Slozer's psychological traits would fairly be received by the intended audience as nothing more than opinionated assessments of a political opponent's character and motivation.

Trial Court Opinion, 8/22/14 at 14. We agree.

First, the language used does not claim that a professional diagnosis for any mental health issue exists. *See* Complaint, 4/16/12, Exhibit A at 1-5. Rather the references draw parallels the author perceives between the positions and actions of Appellants in the context of Borough politics and the supposed symptomatic manifestations suggested by the definitions of certain psychological conditions. *Id.* Read in the context of the whole posting it is clear, as the trial court notes, that the import is that the political positions of

Appellants are irrational in the view of the author because they are "reminiscent" of conclusions and positions that would be generated by one with such mental traits. *Id.* at 5. While the tone and manner of expression may be crude, unartful, and vexing for Appellants, that does not raise the author's opinions in this regard, capable of defamatory meaning. *See Kurowski*, *supra*. Accordingly, we discern no error by the trial court in granting Slattery and Citizens' motion for summary judgment relative to Slozer's defamation claim.

With respect to the averments in the posting averring criminal conduct by Donches, the statements are more direct. Here the statements were not stated as comparisons or opinion as was the case with the references to "undiagnosed" mental health conditions. *See* Complaint, 4/16/12, Exhibit A at 1-2. Rather the incidents were stated as facts of criminal conduct. *Id.* "Statements by a defendant imputing to the plaintiff a criminal offense, punishable by imprisonment, or conduct incompatible with the plaintiff's business constitute slander *per se*." *Brinich v. Jencka*, 757 A.2d 388, 397 (Pa. Super. 2000), *appeal denied*, 771 A.2d 1276 (Pa. 2001), *citing* RESTATEMENT (SECOND) OF TORTS §§ 570(a), (c), 571, 573 (holding published statement indicating plaintiffs misused construction loan funds to support a drug habit is defamatory *per se*); *see also Krajewski*, *supra* (holding publication of comments interpretable as impugning public figure plaintiff with criminal conduct was capable of defamatory meaning); *Agriss v.*

***Roadway Exp., Inc.***, 483 A.2d 456, 462-463 (Pa. Super. 1984) (holding statement that plaintiff opened company mail was capable of defamatory meaning because it implicated criminal conduct).

The trial court determined, however, under the facts of this case, that Appellants could not establish the requisite malice by clear and convincing evidence. ***See Tucker***, ***supra***. Our review of the record compels us to agree. While Donches in his deposition testimony provided alternate explanations for the incidents referred to on the website and relative to Slattery's comment about the photo line-up, he admitted to the basic factual truth that the incidents occurred and that allegations had been made against him. Slattery's Motion for Summary Judgment, 5/29/14, Exhibit H (Deposition of Donches) at 7, 8-16. As such, we concur in the trial court's conclusion that Donches could not establish malice on the part of Slattery or Citizens by clear and convincing evidence. ***See*** Trial Court Opinion, 8/22/14, at 10 (stating, "the undisputed facts establish that Donches, without permission, took property not belonging to him and that he, in fact, verbally and physically confronted another person in the course of a traffic accident"); ***see also Tucker***, ***supra***. Where a factual basis for a statement is present, malice cannot be shown merely because further investigation may have led to different conclusions. "However… even were [an a]ppellee to be deemed negligent for failure to investigate, either by obtaining independent confirmation of his information or consulting other, possibly

more reliable sources, that finding would be insufficient to demonstrate actual malice." **Blackwell v. Eskin**, 916 A.2d 1123, 1126, (Pa. Super. 2007). Accordingly, we conclude as a matter of law that Donches would be unable to establish actual malice against Slattery and Citizens by clear and convincing evidence. We therefore conclude the trial court did not err in granting Slattery and Citizens' motion for summary judgment relative to Donches' claims.

In summary, we conclude that Appellants' claims against Appellees Neely and Barrett are barred as being commenced after the expiration of the applicable statute of limitations. We also conclude that Appellee Holzhafer's posting a link to the allegedly defamatory website with a "like" designation on her Facebook page, is not a republication of the content of the website sufficient to support a separate cause of action for defamation against her. We further conclude that for the purposes of the instant litigation, both Appellants are public figures and subject to the burdens attendant to public figure plaintiffs in defamation cases. Additionally, we conclude that the alleged defamatory comments relative to the mental health status of the Appellants is not capable of defamatory meaning when viewed in the context of the website as a whole. Finally, we conclude that the statement attributing criminal behavior to Donches cannot be shown to have been made with malice by clear and convincing evidence.

Based on the foregoing, we discern no issues of material fact for a jury to determine in this case, and we find no error by the trial court in granting the several motions for summary judgment and dismissing Appellants' complaint with prejudice. Accordingly, the trial court's August 22, 2014 order is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/18/2015</u>