OPINION OF THE COURT
Charles J. Markey, J.
The principal issue in defendant Republic Western Insurance Company’s motion to reargue — incorrectly labeled a motion to renew — is the propriety of this court, in its prior decision of July 7, 2003 (reported electronically at 2003 NY Slip Op 51070[U] [2003]), in employing information made available on a state governmental Web site and examining and using admissions, statements made by both Republic and its sibling corporation, U-Haul, on their Internet Web sites. This motion to reargue appears to be the first in the nation to challenge a court’s use of the Internet to deflate the sails of a party’s arguments.
In the prior opinion, this court, addressing an issue of then first impression in this state, rejected a motion by Republic to dismiss for lack of subject matter jurisdiction, pursuant to New York City Civil Court Act § 404, or to dismiss for forum non conveniens. The plaintiff health care provider, N.Y.C. Medical and Neurodiagnostic, P.C., is the assignee of no-fault first-party benefits. The vehicle that was involved in the accident causing injury was owned by U-Haul International, Inc., famous for its rental of vehicles, and was leased or rented from a U-Haul facility in the City of New York, and was insured by defendant Republic. The basis of Republic’s prior motion to dismiss was that its underwriting of all U-Haul vehicles was done in the State of Arizona, it is incorporated in the State of Arizona, and that the sole office out of which it conducts business in the State of New York is located in the Town of Purchase, in the County of West- *927 Chester. According to Republic’s logic and prior arguments, the facts that the U-Haul vehicle was rented in New York City, the U-Haul vehicle was insured by Republic, the accident occurred in New York City, the persons involved in the accident reside in New York City, and the health care provider from which the assignor sought treatment — under a state-controlled system of no-fault benefits — is located in Queens County, in New York City, are all entitled to no weight.
According to Republic, the only places where the plaintiff health care provider could litigate the issue of reimbursement against insurer Republic would be in either Westchester County or the State of Arizona. Since this court does not agree that the tail wags the dog, under the proverbial adage, it rejected totally Republic’s motion to dismiss. This court’s seminal decision on the issue on whether the Civil Court of the City of New York has jurisdiction will soon be argued before the Appellate Term, Second and Eleventh Judicial Districts (case No. 2003-1472).
As an initial matter, counsel for Republic moves to renew this court’s prior decision. The fact that James G. Eberz, Esq., a partner of the firm representing Republic, calls this motion one to renew is not dispositive (see, Alpert v Wolf, 194 Misc 2d 126, 133 [Civ Ct, NY County 2002]). A trial court has an obligation to appellate justices to correct any mislabeling of a motion, so as not to add to the burdens of the reviewing justices. Fundamental differences exist between a motion to reargue and one to renew. The motion to reargue simply states that the court overlooked or misapprehended the facts or the law. The motion to renew, when properly made, posits newly discovered facts that were not previously available or a sufficient explanation is made why they could not have been offered to the court originally (see discussion in Alpert v Wolf, 194 Misc 2d at 133; D. Siegel, NY Prac § 254 [3d ed 1999]). Republic, however, fails to set forth any new facts and simply rehashes its old and rejected arguments. This court doubts that Mr. Eberz and his law firm are ignorant of the distinctions, since the denial of a motion to renew is appealable, whereas the denial of a motion to reargue is not appealable (see, Pizarro v Evergreen Estates Hous., 5 AD3d 143 [1st Dept 2004]; Ruddock v Boland Rentals, 5 AD3d 368 [2d Dept 2004]).[1]
*928 The present motion to reargue, as it ought to have been denominated, assails this court, for two reasons. First, Republic’s motion states that the court should not have looked for the information posted on the Web site of the Department of Insurance of the State of New York (<www.ins.state.ny.us/tocol4.htm>, cited in the prior opinion, 2004 NY Slip Op 51070[U], *6), disclosing that it is authorized to engage in the business of insurance in the State of New York. Second, Republic’s counsel contends that this court erred in searching the Web sites of Republic and its sibling corporation, U-Haul.
Turning first to the contention that this court’s use of a state governmental Web site was improper, the examples of court decisions making similar citations are legion. In Efam Enters. v Travelers Indem. Co. of Am. (2002 WL 1148830, 2002 US Dist LEXIS 10046 [SD NY, May 29, 2002]), for example, the federal court referred to both the Web sites of the New York State and Connecticut Departments of Insurance to verify the defendant insurer’s identity and corporate status (accord, United States Postal Serv. v Flamingo Indus. [USA], Ltd., 540 US —, —, 124 S Ct 1321, 1329 [2004] [unanimous Supreme Court referred to revenue and business of the United States Postal Service, as detailed on its Web site]; Verizon Communications Inc. v Law Offices of Curtis V. Trinko, LLP, 540 US —, —, 124 S Ct 872, 877 [2004] [referring to consent decree on Web site of the Federal Communications Commission]; Doe v Merten, 219 FRD 387, 396 n 28 [ED Va 2004] [citing statistics on a Web site compiled by the Bureau of Citizenship and Immigration Services of the United States Department of Homeland Security]; Hamilton v Beretta U.S.A. Corp., 96 NY2d 222, 234 n 1, 238 n 7 [2001] [citing homicide statistics maintained by governmental agencies and explanation of tracing a gun’s ownership from the Web site of the Bureau of Alcohol, Tobacco and Firearms]).
Legislative bodies, courts, governmental agencies, and public entities have commendably made information available *929 on Web sites that have dramatically facilitated the quick location of information. Just as computerized research of Westlaw and LEXIS have made resort to more time-consuming conventional research secondary, factual information and data that, in the past, would have taken days and hours to retrieve, are now available in a matter of seconds. Technological breakthroughs, including the immediate scanning of important documents and the tapping of a few strokes on a computer keyboard, speed fact-finding, ensure that documents will not be lost, misplaced, or stolen, and are highly reliable. For a researcher not to employ information placed on a governmental Web site, by a civil servant, for the benefit of the public would, indeed, be negligent and ridiculous. For a judge to ignore these new technological changes, made available by government and encouraged by court systems, would be to blind oneself.
Mr. Eberz, however, suggests that the references on the Web site posted by the Superintendent of Insurance of the State of New York may be incorrect in that Republic is not “licensed” to do business in the State of New York, but only “admitted” to do so. Mr. Eberz does not spell out the distinction or any pragmatic difference between the two terms.
First, Mr. Eberz’s attorney’s affirmation would be insufficient, as a matter of law, to spell out the difference between the two terms, assuming arguendo that there is one. At any rate, Republic is authorized, whether “admitted” or “licensed,” to do insurance business in New York (see, Diagnostic Rehab. Med. Serv. v Republic W. Ins. Co., 2003 NY Slip Op 51458[U] [Civ Ct, Kings County, Nov. 19, 2003], and subsequent order, Index No. 50078/2003, Jan. 6, 2004). The records of the Superintendent of Insurance of the State of New York, posted on a governmental Web site and available to not only the undersigned, but also anyone else with access to the Internet, demonstrate that Republic is authorized to engage in the business of insurance in the State of New York.
The defendant’s argument regarding this court’s use of Republic’s Web site and that of U-Haul, its sibling company, fares no better. Republic’s argument is that this court, using the Web sites of U-Haul and Republic, found that U-Haul has numerous facilities in each of the five boroughs of the City of New York and that each of those U-Haul vehicles is insured by Republic.
The term “www” stands for the “world wide web” (see, Hill & Assoc. v Compuserve, Inc., 2003 WL 22327827, 2003 US *930 Dist LEXIS 18187 [SD Ind, Sept. 26, 2003]). The statements placed on the Web sites of Republic and U-Haul were made, not by this court or some bystander, but by Republic and U-Haul and operate as admissions (see, Intel Corp. v Hamidi, 30 Cal 4th 1342, 1353, 71 P3d 296, 304 [2003] [statement posted on company’s Web site operated as an admission against it]). Second, by the very definition of “the world wide web,” the postings made by Republic and U-Haul were not simply targeted to a select few, to be privately guarded, but were electronically made available for everyone on the face of the earth with access to a computer to see.
Third, this court did not undertake its own personal investigation. Neither the undersigned nor any of its representatives or agents went to a U-Haul facility to take an application for a rental car or inquire about insurance for such a vehicle. This court, moreover, did not undertake its own poll or even send law clerks to the reading room of the main branch of the New York Public Library on Fifth Avenue to dig for statistics, articles, news accounts, or information written by a third party in a remote treatise. The facts secured by this court, furthermore, were not derived by framing term requests on any of the modern, popular search engines — such as Google, MSN Search, Yahoo Search, or Ask Jeeves — and, based on the information derived therefrom, used to fashion a factual argument to sandbag counsel.
Rather, the court, on its own initiative, explored the Web site of a party to this litigation and that of its sibling corporation. The statements made by Republic on its Internet site (www.repwest.com) were made by Republic itself, and, similarly, the statements made by U-Haul on its Web site (www.uhaul.com) were made by U-Haul itself. Republic’s counsel does not even challenge their accuracy. The research of and citation to a publicly posted Web site of a party to this litigation and that of its sibling corporation are proper. Moreover, those publicly available Web site statements merely reiterated what counsel for those two companies have already advised the Appellate Division in Matter of Wausau Ins. Co. v Ogochukwu (295 AD2d 280 [1st Dept 2002]) that Republic insures all U-Haul vehicles.
Republic’s reliance on the case of Central Hanover Bank & Trust Co. v Eisner (276 NY 121 [1937]) is misplaced. In that case, the lower court, disagreeing with the report of the special referee regarding the valuation of a parcel of property, made its *931 own viewing of the real estate and noted facts that were not alluded to in the testimony and not directly having to do with the property in question. That type of personal investigation is a far cry from the facts of the instant case, where Republic and its sibling company, U-Haul, have made world wide declarations, on their Web sites, that Republic insures every vehicle rented and leased by U-Haul in the United States.
Fourth, this court’s research, framing a request of “ ‘world wide web’ or ‘www.!’ ” on Westlaw, as of April 12, 2004, resulted in 98 published judicial opinions in reported New York State cases (the NY-CS database) referring to a Web site, 38 such opinions by the Supreme Court of the United States (the SCT database), 1,314 officially reported opinions by all state courts (the allstates database) making such references, and a number of judicial opinions far too vast for Westlaw to retrieve in the databases of all federal courts (allfeds) and the New York Law Journal. Of the cases found by the framed search terms, this court has not reviewed each of them and, therefore, does not warrant that it involves a citation to an Internet Web site invoked by a court, on its own initiative. A perusal of some of the great number of cases, however, indicates that federal and state courts, throughout the country, readily and without apology, will refer to a Web site whenever necessary or helpful to make a point.
The United States Supreme Court, in Reno v American Civ. Liberties Union (521 US 844, 853 [1997]), discussing the importance of the Web, stated: “From the publisher’s point of view, [the World Wide Web] constitutes a vast platform from which to address and hear from a worldwide audience of millions of readers, viewers, researchers, and buyers” (id. at 853, quoted by the Court of Appeals with approval in Firth v State of New York, 98 NY2d 365, 370 [2002]; see, e.g., Gaidon v Guardian Life Ins. Co. of Am., 94 NY2d 330, 342 [1999] [Court of Appeals referred to a study published on a Web site when discussing the cash value of life insurance policies]).
The Supreme Court’s observation about the Internet’s power and scope is not lost on Republic and U-Haul, companies that smartly employ a Web site in order to drum up business. Corporations want their Web sites to be read, not ignored, and, indeed, are constantly devising ways for search engines to catapult their Web sites to the top of a search request. Republic and U-Haul posted the information on their Web sites, hoping to attract the attention of literally millions of persons spanning *932 the globe “for an indefinite period of time” (Firth v State, 98 NY2d at 370). If U-Haul were, indeed, so private about the information contained on its Web site, it would not have emblazoned its Web address so prominently on each of its seemingly ubiquitous vehicles.
Fifth, this court notes that the research on the Web sites was done not on some private personal computer, but on Internet access provided by the Office of Court Administration to the undersigned and every other judge of this state, reflecting a policy that courts utilize emerging technology in dispensing justice.
Finally, the implication of Republic’s argument, that the court was acting as plaintiffs advocate in constructing an argument, has no merit. In the prior opinion (2003 NY Slip Op 51070[U], *3), marking the seminal decision rejecting Republic’s contention that it did not transact business in the City of New York, this court expressed its dissatisfaction with the initial presentations of both parties to this litigation and directed further submissions. This court then discussed some of the supplemental information supplied by both counsel (at *3-4). This court’s references to the U-Haul and Republic Web sites were thus not the sole foundation for its decision and order.
Trying to minimize its nexus with U-Haul, Republic contends, in its motion to reargue, that there is really no connection, and the fact that there are two sibling companies under one umbrella, “mega corporation,” Amerco, should have no weight. The comparison by Republic’s counsel of the relation of U-Haul and Republic to the sibling companies of other “mega corporations” (citing Cendant and Altria) is unavailing, because the examples of other sibling companies cited in Republic’s papers truly are independent and do not depend on the other’s existence.
In the present case, in stark comparison, it is incontestable that U-Haul would not be able to operate business in the City of New York and the State of New York unless each of its vehicles had the minimum insurance required by law (Vehicle and Traffic Law § 370 [3]). Each of the U-Haul vehicles could not be rented, would remain idle in the many U-Haul rental facilities located in the City of New York, and would not be permitted to exit their gates onto the thoroughfares of this City, unless it was insured.
In ELRAC, Inc. v Ward (96 NY2d 58 [2001]), a unanimous Court of Appeals explained that, pursuant to Vehicle and Traffic *933 Law § 388, the owner of a motor vehicle may be held civilly liable for any damage caused by the permissive user of the vehicle (96 NY2d at 72-73). Turning to the issue before it in ELRAC, the Court of Appeals continued that Vehicle and Traffic Law § 370 barred a rental or leasing company from pursuing an action for indemnification from its renters for amounts up to the minimum liability requirements (id. at 73). Section 370 (3) requires rental agencies to obtain a minimum amount of insurance for its vehicles (Vehicle and Traffic Law § 370 [3]).
Chief Judge Kaye, speaking for the entire Court in ELRAC, stated:
“The language of section 370 is plain and precise. Common carriers, including rental car companies, are required to obtain insurance for their vehicles . . . Furthermore, the policy must ‘inure to the benefit’ of any permissive user of the vehicle (Vehicle and Traffic Law § 370 [1] [b] [emphasis added]). A renter is, of course, a permissive user. Thus, section 370 clearly requires the rental company to provide the renter with this minimum level of coverage.” (96 NY2d at 73; accord, Ruddock v Boland Rentals, 5 AD3d 368, 370 [2004], supra [Second Department affirmed determination that defendant vehicle rental company “as a ‘corporation engaged in the business of renting or leasing rental vehicles to be operated upon the public highways,’ ” quoting Vehicle and Traffic Law § 370 (3), must provide primary insurance to permissive users of its vehicles].)
The insurance demanded by Vehicle and Traffic Law § 370 (3) and § 388, in the present case, is supplied by Republic, U-Haul’s sibling company, thereby enabling U-Haul to collect substantial revenues from New York City customers and to maintain the many U-Haul rental facilities that operate in this City. Without the insurance furnished by Republic, its sibling company, U-Haul could take out all the Yellow Pages advertisements it likes, but it legally could not rent a single car in the State of New York. Republic’s counsel does not seem to challenge that fact. It is surreal for Republic to pretend that the World Wide Web does not exist, U-Haul can rent vehicles without insurance, and that the ties between Republic and U-Haul are nebulous.
Every single U-Haul vehicle rented by it in the United States is insured by Republic. Indeed, as stated above, in front of a panel of Justices of the Appellate Division, First Department, *934 when there was confusion as to the insurer of the U-Haul vehicle, the attorneys for U-Haul and Republic advised the Court that all U-Haul vehicles are insured by defendant Republic (Matter of Wausau Ins. Co. v Ogochukwu, 295 AD2d 280 [2002], supra).
The entire policy behind the New York Legislature’s scheme for providing no-fault first-party benefits, the prompt payment or speedy disposition of such claims, would crumble if health care professionals were forced to run from all parts of this state to Westchester County or to travel to Arizona to litigate their right to reimbursement (see discussion of the hypothetical examples posited in the prior opinion, 2003 NY Slip Op 51070[U], *9; see generally, Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U], *3 [App Term, 2d Dept, Dec. 24, 2003] [“to hold otherwise would undermine the clear legislative mandate to facilitate the prompt and efficient resolution of first-party no-fault claims”]; Damadian MRI in Elmhurst v Liberty Mut. Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51700[U] [App Term, 2d Dept, Dec. 24, 2003]; Zlatnick v Government Empls. Ins. Co., 2 Misc 3d 347 [Civ Ct, Queens County 2003] [regarding the general undermining of the policy of the no-fault laws]).
As stated at the outset of this opinion, the tail does not wag the dog, and this court also rejects the alternative argument of Republic’s counsel, on this motion to reargue, that a special exception should be carved for this self-styled “relatively small out of state carrier” (Eberz affirmation ¶ 9).
Republic’s motion to dismiss strikes at the heart of the Court of Appeals ELRAC decision (96 NY2d 58, 72-74 [2001], supra). Defendant Republic collects revenue by insuring the vehicles of its sibling corporation, U-Haul, in the City of New York, but, when an accident occurs, shirks its responsibilities under the no-fault scheme, and, indeed, frustrates and undermines the purpose of the no-fault laws, by trying to making it difficult for a health care provider to collect reimbursement for its services.
When Republic’s insurance makes it possible for U-Haul vehicles to be rented in all five boroughs of the City of New York and to circulate on the City’s highways and streets, and in its traffic, it does not matter whether the policy of insurance was written in Arizona, Alabama, or Alaska or whether Republic’s office in this state is located in Purchase, Plattsburgh, or Parkchester.
Republic has filed numerous similar motions to dismiss for lack of jurisdiction in the courts of inferior jurisdiction. As seen *935 in some unreported opinions that preceded this court’s prior opinion, Republic’s arguments have convinced other courts to grant its motion to dismiss (see, e.g., PLP Acupuncture v Republic W. Ins. Co., Nassau Dist Ct, Feb. 25, 2003, Index No. 24863/ 2002 [no indication provided by plaintiffs counsel what connection the case had to Nassau County]; Viva Massage Therapy v Republic W. Ins. Co., Civ Ct, Queens County, Feb. 25, 2003, Index No. 84410/2002 [motion to dismiss granted on default]; Ostia Med. v Republic W. Ins. Co., Civ Ct, Queens County, May 20, 2003, Index No. 66847/2002 [lamenting that plaintiff had not presented any evidence and had it done so “this Court may have rendered a different decision”]).
This court notes that, following the reporting of its prior opinion electronically in Westlaw and LEXIS and in print by the New York Law Journal, several courts, citing the decision, agreed with this court’s reasoning and began denying the same motion to dismiss by Republic (see, e.g., Heritage Med. Servs. v Republic W. Ins. Co., NYLJ, Mar. 9, 2004, at 19, col 1 [Civ Ct, Kings County]; Diagnostic Rehab. Med. Serv. v Republic W. Ins. Co., 2003 NY Slip Op 51458[U], supra; West Tremont Med. Diagnostics v Republic W. Ins. Co., Civ Ct, Bronx County, Aug. 29, 2003, Index No. 72381/2002).
In the opinion of the undersigned, adoption of Republic’s arguments would result in the dessication and evisceration of the no-fault scheme. Only the Appellate Term’s forthcoming review of the issue will permit a dispositive holding to avoid the inconsistent results now being reached.
Republic’s arguments about this court’s citations to Republic’s and U-Haul’s admissions made on the World Wide Web are vacuous. The story goes that Abraham Lincoln once asked a crowd how many legs a sheep would have if we called its tail a leg. When the crowd yelled back, “Five,” Lincoln shot back, answering his own question, “No, four, because calling a tail a leg doesn’t make it one.” Similarly, Republic’s repeated claims of lack of jurisdiction for its insurance of a U-Haul vehicle rented in New York City ought to fall on deaf ears.

. Another possible reason why Republic sought renewal, instead of reargument, is that its counsel may have believed that a motion to reargue would be untimely, since the date of its motion to renew is August 28, 2003, well past *928 30 days following the date of service of the notice of entry on July 10, 2003 (see, CPLR 5513). Plaintiffs counsel, however, in serving the notice of entry, failed to append a copy of the order bearing the clerk’s stamped date of entry of July 8, 2003, and, in the accompanying notice, incorrectly identified the date of entry as July 7 (which was only the date that the decision and order was signed). The notice of entry that was served upon Republic’s counsel thus was a nullity (see, Baranello v Westchester Sq. Med. Ctr., 282 AD2d 259 [1st Dept 2001]), and this motion to reargue is thus timely (see, CPLR 5513). Even if untimely, a court, under the provident exercise of its discretion, may entertain an untimely motion to reargue (see, e.g., Garcia v Jesuits of Fordham, 6 AD3d 163 [1st Dept 2004]).