# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MASTERWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N25C-06-243 FWW |
| v. | ) | |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: September 19, 2025
Decided: December 8, 2025

*Upon Defendant John Doe's Motion to Dismiss*
**DENIED.**

*Upon Defendant John Doe's Motion for a Protective Order*
**DENIED.**

## ORDER

Jennifer L. Cree, Esquire, LANDIS RATH & COBB LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801, attorney for Plaintiff Appellee Masterworks, LLC.

Christopher Isaac, Esquire, IPPOLITI LAW GROUP, 1225 King Street, Wilmington, DE 19801, attorney for Defendant John Doe

**WHARTON, J.**

This 8th day of December 2025 upon consideration of Defendant John Doe's ("Defendant") Motion to Dismiss the Complaint ("Motion to Dismiss") and Motion for a Protective Order regarding Pre-Service Discovery ("Motion for Protective Order"),[1] Masterworks, LLC's ("Masterworks") Response in Opposition,[2] Defendant's Reply in Support of their Motion,[3] and the record in this case, it appears to the Court that:

1.    Plaintiff filed its Complaint on June 25, 2025.[4] Plaintiff also filed an Ex Parte Motion to file the Complaint against Defendant John Doe on June 25, 2025.[5] Plaintiff's Motion was granted by the court on June 27, 2025.[6]

2.    Plaintiff Masterworks is a Delaware limited liability company with its principal place of business at One World Trade Center, 57th Floor, New York, NY 10007.[7] Defendant, sued as John Doe and alleged to be the principal or principals operating and profiting from the website WantFI.com, is an individual or entity of unknown residence.[8]

---

[1] Def.'s Mot. to Dismiss, D.I. 7. ("MTD"); Def.'s Mot. for a Protective Order, D.I. 8. ("MPO").
[2] Pl.'s. Resp. to MTD, D.I. 11.; Pl.'s Resp. to MPO, D.I. 12.
[3] Def.'s Reply to MTD, D.I. 14.; Def.'s Reply to MPO, D.I. 15.
[4] Compl., D.I. 1.
[5] Pl.'s Ex Parte Motion to File Complaint, D.I. 1.
[6] Order, D.I. 2.
[7] Compl. at 2.
[8] *Id.*

3.      Masterworks operates an online investment platform[9] that enables investors to purchase ownership interests in special purpose companies that invest in distinct artworks or collections of artworks.[10]  Once users establish profiles on the website, they can view potential artwork investment opportunities, the details, and execute the contractual documents.[11]  Masterworks' employs art specialists that manage sale timing based on market conditions and work with collectors and auction houses to sell the artworks, to then distribute proceeds to investors.[12]  Masterworks asserts that it is in full compliance with SEC and other applicable regulations and makes all required disclosures to the investors.[13]

4.      According to the complaint, WantFI is the publisher of the commercial website WantFI.com, which is designed to earn revenue by attracting consumer attention through sensationalized news stories.[14]  WantFI's logo stands for "want financial independence," and its focus is consumers interested in investing and providing them stories about "scams" and financial-market scandals.[15]  The complaint alleges that consumers who read stories on WantFI.com are presented with links to commercial websites selling investing or financial management

---

[9] https://www.masterworks.com/
[10] Compl. at 2.
[11] *Id.* at 2-3.
[12] *Id.* at 3.
[13] *Id.*
[14] *Id.*
[15] *Id.*

3

products and services, and WantFI receives commissions when users click those links.[16]

5.     Masterworks alleges that in or around 2022 WantFI published and has maintained an article about Masterworks, that as of the date the complaint was filed is titled "Honest Masterworks Review 2025: How NOT to Invest in Art,"[17] (the "Masterworks Article"). The complaint identifies statements in the Masterworks Article that Masterworks contends are false, including assertions that: "Masterworks is basically a fee scam;" its investments are "like a Ponzi scheme;" Masterworks has "obscene fees" and "conflicts of interest;" founder Scott Lynn "has founded some shady marketing businesses in the past;" Masterworks creates "faux demand;" Masterworks has a "scammy business model where they fee your investment to death, which overwhelmingly favors their interests;" and Masterworks has "shady business practices" and engages in a "fee grab where they act as an art hedge fund."[18]

6.     In October 2022, Masterworks' CEO, Scott Lynn ("Lynn"), and CIO, Allen Sukholitsky ("Sukholitsky"), contacted WantFI through the website's contact form.[19] Lynn and Sukholitsky requested an opportunity to correct the alleged factual falsehoods in the article.[20] WantFI agreed to interview them on the condition that

---

[16] *Id.*
[17] https://wantfi.com/masterworks-review.html
[18] Compl. at 4.
[19] *Id.*
[20] *Id.*

4

WantFI's operator(s) remain anonymous.[21] Lynn and Sukholitsky agreed, and WantFI then published edited portions of the interview but declined to correct the alleged falsehoods.[22]

7. The complaint alleges that WantFI has taken extensive measures to operate anonymously.[23] Verisign is the registrar for WantFI.com and maintains contact information for domain owners, but would not release the owner's information absent a subpoena or other legal process.[24] The website is hosted by Cloudflare, which likewise maintains records identifying the operator of WantFI.com but also would not release the information without a subpoena.[25]

8. The WantFI website provides no identifying information beyond a description of an alleged founder named "Ryan" without a last name or contact details, and its "contact us" page contains only a web-based comment form, with no address, phone number, email address, or entity name on the site.[26] The site includes a copyright notice,[27] and has no U.S. registered trademarks directly associated with that name.[28] A nationwide search done by Masterworks of Secretary of State

---

[21] *Id.* at 4-5.
[22] *Id.* at 5.
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] "©C2020-2025 WantFI.com"
[28] Compl. at 6.

registrations using the Lexis service revealed no business registered or incorporated as "WantFI.com" or "WantFI."[29] During the 2022 correspondence between the two parties, WantFI refused to provide any contact information.[30]

9. Masterworks alleges that it has been injured by WantFI's conduct, including the loss of specific customers who read and believed the Masterworks Article.[31] Masterworks contends its damages have not been fully quantified but exceed $75,000 in lost business opportunities.[32]

10. Due to the identity of the Defendant being unknown, Plaintiff filed a Motion to Engage in Pre-Service Discovery to uncover the identity of the Defendant on July 14, 2025.[33] The Court granted the motion on July 23, 2025.[34] Plaintiff provided notice to Defendant of the Motion for Pre-Suit Discovery through Defendant's website, "Wantfi.com" on July 25, 2025.[35]

11. Defendant filed a Motion to Dismiss on August 21, 2025, arguing that Plaintiff filed the Complaint after the statute of limitations had run.[36]

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] Pl.'s Ex Parte Motion to Engage in Pre-Service Discovery., D.I. 3.
[34] Order. D.I. 4.
[35] Affidavit of Ainsley Ahern. D.I. 5.
[36] Def.'s MTD., D.I. 7.

6

12.     Defendant also filed a Motion for Protective Order on August 21, 2025 asking the Court to order Defendant's identity to remain confidential.[37]

13.     A motion to dismiss for failure to state a claim pursuant to Superior Court Rule 12(b)(6) will not be granted if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[38] The Court's review is limited to the well-pled allegations in the complaint.[39] In ruling on a 12(b)(6) motion, the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[40] Dismissal is warranted "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[41] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[42] The Court may, "despite allegations to the contrary," dismiss a complaint "where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[43]

---

[37] Def.'s MPO, D.I. 8.
[38] *Browne v. Robb*, 583 A.2d 949, 950 (Del. 1990).
[39] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[40] *Id.*
[41] *Id.*
[42] *Ramunno v. Cawley*, 705 A.2d 1029, 10345 (Del. 1998).
[43] *Tigani v. C.I.P. Assocs., LLC*, 2020 WL 2037241, at *2 (Del. Apr. 27, 2020) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 Del. 2001).

14.     Delaware applies a two-year statute of limitations to defamation.[44] But the period resets upon republication when a defendant substantively alters defamatory web content or directs the publication to a new audience.[45] Defendant's 2024 and 2025 updates did both: he refreshed titles to the current year, revised temporal framing and operational metrics, and re-presented unchanged defamatory assertions to cohorts seeking contemporaneous investment guidance.[46] The applicable pleading standard and inquiry notice arguments do not support dismissal at this stage, particularly given the specific, year-stamped edits and added data that re-aimed the article at new readers in 2024 and 2025.

15.     Delaware courts recognize republication when either (1) the statement is substantively altered or added to, or (2) the publication is directed to a new audience.[47] This standard is reflected in *Perlman v. Vox Media, Inc.*[48] and *Isaac v. Politico LLC*[49] which hold that republication intended to reach a new audience

[44] 10 *Del. C.*§ 8119.

[45] *Toptal, LLC v. Bloomberg L.P.*, 2025 WL 2172609, at *14 (Del. Super. July 31, 2025). In *Toptal* the court applying Delaware law accepted the analysis of republication set out in *Perlman v. Vox Media, Inc.* 2020 WL 47303406, at *2 (Del. Super. Aug. 14, 2020).

[46] Pl.'s. Resp. to MTD at 5-6, D.I. 11

[47] *Isaac v. Politico LLC*, 2025 WL 2437093, at *14 (Del. Aug. 25, 2025) (*citing*, 62A Am. Jur. 2d Privacy § 148. ("Thus, where republication is intended to reach a new audience, such republication will refresh the limitation period for bringing an invasion of privacy claim.")); *Perlman,* 2020 WL 47303406, at *2.

[48] 2020 WL 47303406 at *2.

[49] 2025 WL 2437093 at *14.

refreshes the limitations period. Liability for such republication attaches where the republished article contains independent defamatory statements or restates prior defamatory statements.[50]

Courts further distinguish mere technical changes like a hyperlink, from substantive changes related to the allegedly defamatory material.[51] Directing the website to a new audience and/or substantially altering a statement align with republication.[52]

16. *Isaac* instructs that republication intended to reach a new audience refreshes the limitations period and reassures that a plaintiff is not confined to a single cause of action when private or defamatory material is republished in another separate printing.[53] This principle translates to iterative web publications that deliberately re-aim content to new readerships via temporal rebranding and updated framing.

17. *Toptal* clarifies that republication liability turns on whether the new iteration contains independent defamatory statements or restates prior defamatory

---

[50] *Toptal, LLC v. Bloomberg L.P.*, 2025 WL 2172609, at *14 (Del. Super. July 31, 2025).

[51] *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.*, 2015 WL 5724838, at *20 (Del. Ch. Sept. 30, 2015).

[52] *Perlman* 2020 WL 4730406, at *2. (citing *Firth v. State*, 775 N.E.2d 463, 466 (N.Y. 2002). ("Republication, retriggering the period of limitations, occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition. The justification for this exception to the single publication rule is that the subsequent publication is intended to and actually reaches a new audience.")).

[53] *Id.* at 14.

statements.[54]  When a defendant keeps the same core defamatory accusations while altering temporal context, metrics, and framing to re-present those accusations as current, the publication "restates" the prior defamatory statements to a new audience.

18.    Defendant's January 2025 update to the text of the article increased the number of sold paintings from 8 to 25; increased the number of purchased paintings from approximately 85 to over 400; adjusted operational references from "over 4 years" to "over 6 years"; and added expanded warnings about fees and skin-in-the-game in the conclusion.[55]  These changes were woven into the 2022 article conveying the same core accusations ("Ponzi scheme," "fee scam," "shady business practices"), thereby repackaging and reiterating the alleged defamatory thesis under a materially updated factual record for 2025 readers.[56] This is "substantive alteration" related to the defamatory content—not a mere technical tweak—and therefore constitutes republication.

19.    Defendant re-captioned the article to "Honest Masterworks Review 2024: How NOT to Invest in Art" as of January 9, 2024, and then to "Honest Masterworks Review 2025: How NOT To Invest in Art," contemporaneously updating prompts such as "Is art a good investment in 2025?"[57]  These edits target

---

[54] *Id* at 14.
[55] Pl.'s. Resp. to MTD at 3-4, D.I. 11.
[56] *Id.*
[57] *Id*. at 2-3.

individuals performing searches focusing on 2024 and 2025, a distinct cohort from the 2022 readers, including those searching for year-specific queries. This method of change aligns with *Isaac's*[58] "intent to reach a new audience" and *Perlman's*[59] "directed to a new audience" pathway, refreshing the limitations period. Plaintiff treats the 2024 and 2025 updates to the 2022 article as a sequence of wrongful acts. A sequence of wrongful acts are each subject to a sperate limitations period.[60]

20.     Defendant characterizes the edits as mere "minor updates," "links," or "technical changes."[61]    But the record shows intentional year-to-year retitling, refreshed operational metrics tied to Masterworks' scale, and reframed temporal analysis presenting the same accusations as current.    Defendant's reliance on characterizing the updates as "technical" fails where the changes are substantively related to the alleged defamatory theme, and intentionally re-timed and re-aimed to year-specific readers.    These are not passive technical adjustments—they are substantive and audience-targeted re-presentations that meet the standards set by the body of Delaware case law to be seen as republication.[62]

---

[58] 2025 WL 2437093.
[59] 2020 WL 47303406.
[60] *Isaac*, 2025 WL 2437093, at *14.
[61] Def.'s Reply to MTD at 4., D.I. 14.
[62] *See Isaac*, 2025 WL 2437093, at *14.; *Toptal, LLC*, 2025 WL 2172609, at *14., *Perlman*, 2020 WL 4730406, at *2.

21.     Plaintiff has pled dates and descriptions of the 2024 and 2025 republications, including title changes, refreshed metrics, and temporal re-framing, along with the continued presence of the same defamatory assertions.[63]   These allegations, accepted as true, are sufficient to plausibly plead republication within two years of filing.

22.     Defendant's argument that Plaintiff "was aware since 2022" cannot defeat claims arising from later republications because each qualifying republication starts a new limitations period.[64]   Consistent with *Isaac*, awareness of an original posting does not time-bar claims based on a 2024 or 2025 republication designed to reach new audiences with refreshed framing and metrics.[65]

23.     The Defendant continued to publish the same allegedly defamatory statements, restated to new readers through materially refreshed framing.  In *Toptal,* the court determined that a column with a hyperlink to the defamatory article, without any restatement of the prior defamatory statements, is not a republication.[66] Liability is present where republished content restates prior defamatory statements.[67] The 2024 and 2025 articles did precisely that, with year-specific titling and new data conveying the same accusations as timely and current.  Annual retitling and time-

---

[63] *See* Compl., Pl.'s. Resp. to MTD, D.I. 11
[64] *Isaac*, 2025 WL 2437093, at *14.
[65] *Id.*
[66] *Toptal*, LLC., 2025 WL 2172609, at *15.
[67] *Id.*

bound inquiries (e.g., "Is art a good investment in 2025?") direct the publication to a new audience. Moreover, Plaintiff has identified how search engines and readers seeking current-year guidance would be separately captured, satisfying the "new audience" pathway.[68]

24. Accordingly, the complaint is timely under 10 *Del. C.* § 8119.[69] The complaint was filed on June 5, 2025.[70] Defendant made alleged republications in 2024 and January 2025, each sufficient to refresh the statute of limitations. Under Delaware's two-year statute, the 2024 and 2025 republications render the action timely.

25. Under *Isaac*,[71] *Toptal*,[72] and *Perlman*,[73] Defendant's 2024 and 2025 updates substantively altered and re-aimed the defamatory content to new audiences, thereby restarting the statute of limitations. Plaintiff's detailed allegations easily meet pleading standards, and inquiry notice from 2022 cannot extinguish claims based on later republications. Accordingly, Defendant John Doe's Motion to Dismiss is **DENIED**.

---

[68] Pl.'s. Resp. to MTD at 5-6., D.I. 11.
[69] Del. Code Ann. tit. 10, § 8119
[70] Compl. D.I. 1.
[71] 2025 WL 2437093
[72] 2025 WL 2172609.
[73] 2020 WL 4730406.

26.     The Court will next address Defendant's Motion for a Protective Order.[74] Defendant's motion seeks to preserve anonymity despite a sustained course of alleged defamatory publications accusing Masterworks of operating "like a Ponzi scheme" and a "fee scam."[75]

27.     In *Doe v. Cahill*,[76] the Delaware Supreme Court held that before compelling disclosure of an anonymous speaker's identity, a defamation plaintiff must (1) undertake reasonable efforts to notify the anonymous poster that disclosure is sought and (2) "support his defamation claim with facts sufficient to defeat a summary judgment motion."[77]

28.     The notice component requires reasonable, practicable steps to alert the speaker; the merits component requires a prima facie showing for each essential element within the plaintiff's control.[78]

29.     *Cahill* weighed the risks of unmasking against free expression.[79] Given these competing interests, the Court adopted the summary-judgment standard precisely to guard against unmasking in weak or pretextual cases while allowing legitimate claims to proceed.[80]  To satisfy the summary judgment standard from

---

[74] Def.'s MPO, D.I. 8.
[75] Compl. at 4. D.I. 1.
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Id.*

14

*Cahill* the plaintiff must "submit sufficient evidence to establish a prima facie case for each essential element" under the plaintiff's control.[81] Plaintiff satisfies this test.

30. First, Masterworks satisfies *Cahill's*[82] notice requirement. In October of 2022 Masterworks contacted Defendant through WantFI.com's contact form requesting that the falsehoods be corrected.[83] Defendant responded and insisted on remaining anonymous and then refused to correct any false statements.[84] Masterworks' outreach put Defendant on actual notice that his identity and accountability for the article were at issue. Defendant then republished the article in 2023, 2024, and 2025, maintaining the challenged statements despite the 2022 notice. Separately, Masterworks respected the Court's service order and notified Defendant via WantFI.com.[85] Defendant promptly responded (including initiating settlement contact) and then retained counsel.[86] These facts make clear that, to the extent reasonably practicable, plaintiff undertake efforts to notify the anonymous poster.

31. Defendant's contrary claim that Plaintiff did not try to obtain his identity in 2022 does not negate Plaintiff's documented notice efforts. The test is

---

[81] *Id.* at 460, 463.
[82] 884 A.2d at 460.
[83] Pl.'s. Resp. to MPO at 2., D.I. 12.
[84] *Id.*
[85] *Id.* at 5.
[86] *Id.*

15

reasonable effort to notify that unmasking is sought.[87] Here, Plaintiff's outreach, subsequent service of the Court's discovery order, and Defendant's appearance through counsel demonstrate notice consistent with *Cahill*.[88]

32. Masterworks made a prima facie showing sufficient to defeat summary judgment. Under Delaware law the defamation elements are as follows:

> (1) the defendant made a defamatory statement; (2) concerning the plaintiff; (3) the statement was published; and (4) a third party would understand the character of the communication as defamatory.[89]

33. For public figures there is an additional falsity element, but actual malice need not be proven pre-discovery.[90] The article accuses Masterworks of being "basically a fee scam," operating "like a Ponzi scheme," charging "obscene fees," creating "faux demand," and engaging in "shady business practices."[91] These are factual assertions, not mere rhetorical hyperbole, because they convey verifiable allegations of fraudulent operations and misconduct. Accusations of criminal-fraud-like schemes and dishonest practices are classic defamation when false. The statements expressly reference "Masterworks" and are directed at the company's

---

[87] *Id.* at 461.
[88] *Id.*
[89] *Id.*
[90] *Id.* at 464.
[91] Pl.'s. Resp. to MPO at 2., D.I. 12.

16

business model and practices, satisfying the "concerning" element. The statements were published on WantFI.com, which is publicly accessible, and then republished with updated titles and content in 2023, 2024, and 2025. Publication to third parties is therefore established.

34.    Accusations of operating a "Ponzi scheme" and a "fee scam," as well as "shady business practices," would be understood by reasonable readers as alleging dishonest or fraudulent conduct. Masterworks submitted to the Court the Affidavit of Nigel Glenday averring falsity: fees are disclosed and services delivered; Masterworks purchases actual artworks; fees are transparent and industry-standard; there is no CEO conflict; and operations comply with regulations.[92] At this stage, *Cahill*[93] requires a prima facie evidentiary showing with sufficient evidence of each defamation element.[94] This can be satisfied by sworn attestations.[95]

35.    Delaware law acknowledges and warns against unmasking being used as a tool of harassment, but its safeguard is the summary-judgment standard and the notice requirement, both of which are satisfied here. Plaintiff is not seeking to silence political criticism— it seeks redress for concrete, verifiably false accusations of fraudulent conduct harming its reputation among investors. That is a

---

[92] Ex. A. to Ex Parte Motion of Pl. to engage in pre-service discovery. D.I. 3.
[93] 884 A.2d at 460.
[94] *Id*. at 463-64.
[95] *Id.*

17

paradigmatic case in which unmasking is appropriate after the *Cahill*[96] showings are made. Accordingly, Defendant John Doe's Motion for Protective Order is **DENIED**.

36. For the foregoing reasons, Defendant John Doe's Motion to Dismiss under Rule 12(b)(1), and 10 *Del. C.* §8119 is **DENIED**; and Defendant John Doe's Motion for a Protective Order regarding Pre-Service Discovery under Superior Court Rule 26 is **DENIED.**

**IT IS SO ORDERED.**

*/s/ Ferris W. Wharton*
Ferris W. Wharton, J.

---

[96] *Id.*